**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

DOUGLAS STANLEY and )
DEBORAH STANLEY )
  )
    Plaintiffs, )
  )
v. )     Case No. 1-11-CV-083 BSM
  )
CHARLES CAPPS MINISTRIES, INC.; )
DIAMOND BLUFF ESTATES, LLC; )
CHARLES CAPPS and PEGGY CAPPS, )
INDIVIDUALLY and AS HUSBAND )
AND WIFE; and ANNETTE CAPPS, )
INDIVIDUALLY )
  )
    Defendants. )

## DEFENDANT ANNETTE CAPPS'
## MOTION TO DISMISS

COMES NOW, Defendant Annette Capps, by and through her counsel of record J. Mark Spradley, and Michael James King and S. Greg Pittman of Winters & King, Inc., and moves the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing Plaintiffs' Complaint as against Defendant Annette Capps (hereinafter "Annette") for failure to state a claim upon which relief may be granted. In support of this Motion, Annette states and alleges as follows:

## INTRODUCTION

On May 22, 2006, Plaintiffs purchased Lot 153 in Diamond Bluff Estates in Cleburne County from Defendant Charles Capps Ministries, Inc., Defendant Charles Capps, and Defendant Peggy Capps. [¶5 of Complaint; Ex. 1 and Ex. 2 of Complaint, Doc. #1.] Plaintiffs allege that Diamondhead Estates LLC [sic] is "a real estate development in Cleburne County, Arkansas, consisting of in excess of 200 acres which has and is being developed by Mr. and Mrs.

Charles Capps, Annette Capps, Charles Capps Ministries, Inc., and other entities." [¶4 of Complaint, Doc. #1.] In their Complaint, Plaintiffs allege no facts sufficient to state claims against Annette, and without facts allege three counts or causes of action against Annette as follows: Count I - breach of warranties in a warranty deed, Count II - making false representations, and Count III - violation of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.* [¶¶ 13-28 of Complaint, Doc. #1.] Plaintiffs' Complaint, however, is void of any facts supporting allegations of Annette's involvement in the sale of Lot 153 to Plaintiffs. Plaintiffs' Complaint fails to state a claim upon which relief can be granted because it fails to allege any facts required to meet the tests articulated by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 67 L. Ed. 2d 929 (2007) and Fed.R.Civ.P. 9(b).

## ARGUMENTS AND AUTHORITIES

### I.    STANDARD FOR MOTION TO DISMISS

Dismissal is proper where the plaintiff's complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). "At this stage of the litigation, we accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). To survive a motion under Fed. R. Civ. P. 12(b)(6), the complaint must "be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 67 L. Ed. 2d 929 (2007). In *Twombly* the Supreme Court discarded the "no set of facts" language that has long been used in determining motions to dismiss under Fed.R.Civ.P. 12(b)(6). Stating that this "language has been questioned, criticized,

and explained away long enough," the Supreme Court held that "this famous observation has earned its retirement." *Id.* at 562-63.

Following *Twombly*, a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. Explaining that "plausibility" means something more than "possibility," the Supreme Court held that it was insufficient for a plaintiff to rely on a "formulaic" and "naked" recitation of the elements, or "a legal conclusion couched as a factual allegation.," *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level," and a "pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3. To state a claim, a complaint must show "circumstances, occurrences, and events in support of the claim presented." *Id.* at 555 n.3 (quotation marks omitted). Where the facts presented in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)(quoting Fed.R.Civ.P. 8(a)(2)).

The only allegations contained in the Complaint specifically referring to Annette is that she is "involved in the ministry" and "participated in the common development of properties in Cleburne County, Arkansas pursuant to the common promotional plan involving the Capps Defendants and others." [¶¶3-4 of Complaint, Doc. #1.] There are no other specific allegations as to Annette contained in the Complaint. Plaintiffs have failed to state any facts that show a plausible entitlement to claims against Annette, and according to the holdings in *Twombly* all of Plaintiffs' claims against Annette must be dismissed.

## II. COUNT I OF PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE ANNETTE DID NOT EXECUTE THE WARRANTY DEED AND BECAUSE PLAINTIFFS FAILED TO ALLEGE SUFFICENT FACTS TO STATE A CLAIM FOR BREACH OF WARRANTIES CONTAINED IN A WARRANTY DEED.

This Court should dismiss Count I of Plaintiffs' Complaint against Annette because she was not a party to the general warranty deed and did not execute it. Plaintiffs allege that Defendants, including Annette, are liable for "breach of warranties contained in the Warranty Deed…including, but not limited to, warranties of quiet enjoyment and access." [¶14 of Complaint, Doc. #1.] Plaintiffs make this allegation in spite of the fact that Annette was not a party to the general warranty deed, nor did Annette execute the general warranty deed. [See Exhibit 1 to Complaint, Doc. #1.] In order to be liable for warranty claims stemming from a warranty deed, one must necessarily be a grantor on the deed. It is undisputed that Annette was not a grantor listed on the warranty deed. It is beyond explanation how or why Annette is liable to Plaintiffs for breach of warranties contained in a warranty deed that she never executed. This Court should accordingly dismiss Count I of Plaintiffs' Complaint as it relates to Annette.

Even if Annette had executed the warranty deed (which she did not), Plaintiffs failed to state facts sufficient to allege a breach of the warranties contained in a general warranty deed. In catchall fashion, Plaintiffs allege that Defendants, including Annette, breached the "warranties contained in the Warranty Deed…including, but not limited to, warranties of quiet enjoyment and access." [¶14 of Complaint, Doc. #1.] Other than the warranty of quiet enjoyment and the fictional warranty of "access," Plaintiffs fail to allege with any specificity what other warranties have been breached.

When a conveying instrument utilizes the words "grant, bargain and sell," Ark. Code Ann. § 18-12-102(b) relates that the express covenants bestowed upon a grantee include "an

indefeasible estate in fee simple, free from encumbrance done or suffered from the grantor" and also "for the quiet enjoyment thereof against the grantor" and free from the "claim and demand of all other persons whatever." The warranty deed alleged and attached to the Complaint as Exhibit 1 contains the words "grant, bargain, sell and convey" and includes the covenants described in Ark. Code Ann. § 18-12-102(b). The Arkansas Supreme Court described the usual covenants of title in a general warranty deed in *Turner v. Eubanks*, 26 Ark.App. 22, 26, 759 S.W.2d 37, 39 (1988), opining:

> The usual covenants of title in a general warranty deed are the **covenants of seisen, good right to convey, against incumbrances, for quiet enjoyment and general warranty**. *Logan v. Moulder*, 1 Ark. 313, 320 (1839); see also *Proffitt v. Isley*, 13 Ark.App. 281, 283, 683 S.W.2d 243 (1985). [Emphasis supplied.]

Arkansas jurisprudence recognizes essentially five covenants of title in a warranty deed- (i) seisen, (ii) good right to convey, (iii) free from encumbrance, (iv) quiet enjoyment, and (v) general warranty. Plaintiffs' Complaint alleges, in summary fashion, that Defendants, including Annette, breached all the covenants contained in the warranty deed. Plaintiffs failed to state facts sufficient to allege a claim for breach of *any* of the five recognized warranties that are usually contained in a warranty deed. Plaintiffs also attempt to create new Arkansas jurisprudence by alleging Defendants, including Annette, breached the covenant of "access." The warranty of "access" is a fictional covenant created by Plaintiffs and is not recognized under Arkansas law.

Plaintiffs failed to state any facts sufficient to allege a claim for breach of the covenant of seisen or "good right to convey." In *Bosnick v. Hill*, 292 Ark. 505, 507, 731 S.W.2d 204, 206 (1987), the Arkansas Supreme Court described the covenant of seisin as being breached "if the grantor has not the possession, the right of possession and the complete title." Plaintiffs' Complaint contains no allegations as to Annette failing to deliver possession or good title at the

time of closing. According to the treatise 20 Am. Jur. 2d *Covenants, Etc.* § 82, the "good right to convey" and seisin are similar:

> In making the covenant of seisin, a grantor warrants that the grantor is seized of the estate the deed purports to convey. Seisin has been described as synonymous with the covenant of good right to convey, and the analysis of whether a grantor breached one of these covenants is the same for either covenant.

There are no allegations in the Complaint contending that Annette failed to deliver possession of title or the complete title at the time of closing on Lot 153.

Plaintiffs also do not allege that Annette breached the covenant against encumbrances. "An encumbrance is any right to an interest in land which may subsist in third persons, to the diminution of the value of the land, not inconsistent with the passing of title." *Proffitt v. Isley*, 13 Ark.App. 281, 283, 683 S.W.2d 243, 244 (1985). There are no allegations contained in the Complaint that Annette transferred Lot 153 subject to an encumbrance, or the superior right of some third party.

Plaintiffs failed to state any facts sufficient to allege a claim for breach of the warranty of quiet enjoyment. According to the treatise 20 Am. Jur. 2d *Covenants, Etc.* § 104, the covenant of quiet enjoyment is breached *only upon eviction by virtue of paramount title*:

> A covenant of quiet enjoyment is broken only by an entry upon, and an expulsion from, the land or some actual disturbance of the possession of the land by virtue of some paramount title or right. In other words, there must be an eviction or ouster, actual or constructive, from the premises conveyed or leased, or some portion thereof, by title paramount. In this context, a "paramount title" is one that would prevail over another title in an action or one that would be otherwise successfully asserted against another's title. (footnotes omitted)

To state a claim for breach of warranty of quiet enjoyment, Plaintiffs must allege that they have been dispossessed of their property by reason of paramount title. The Arkansas Supreme Court in *Hoppes v. Cheek*, 21 Ark. 585, 585 (1860), opined that "[t]o constitute a breach of the covenant for quiet enjoyment, there must be a union of acts of disturbance and lawful title-a possession by

mere intruder, without color of title, through mistake as to the boundary, constitutes no breach of such covenant." Plaintiffs allege that Defendants, including Annette, breached a warranty of quiet enjoyment, but failed to allege whose paramount title disturbs their quiet enjoyment. Plaintiffs allege that landslides and other alleged property defects have disturbed their quiet enjoyment, but fail to allege that their quiet enjoyment has been disturbed by paramount title. Plaintiffs failed to allege any facts concerning paramount title, an element which is indispensable to state a claim for breach of the warranty of quiet enjoyment.

Plaintiffs also failed to allege facts sufficient to state a claim for the breach of warranty contained in the deed. It is well settled that the "covenant of warranty is a protection against known, as well as unknown, defects of title." *Lampkin v. Long*, 226 Ark. 476, 478, 290 S.W.2d 623, 624 (1956) (citing Jones, *Arkansas Titles*, § 397); also see *Gude v. Wright*, 232 Ark. 310, 313, 335 S.W.2d 727, 729 (1960) (holding that "covenants of warranty are taken for protection and indemnity against known and unknown encumbrances or defects in title.") There are no allegations contained in the Complaint that refer to or that can be interpreted as allegations of title defects. Plaintiffs' allegations encompass alleged property defects and not title defects. *Borden v. Litchford*, 619 S.W.2d 715 (Ky. Ct. App. 1981) is instructive as to the principle that the general warranty contained in a deed pertains only to title defects. The plaintiffs in *Litchford* were the purchasers of a newly-built home that they alleged had multiple construction defects. In discussing various warranty issues, the Kentucky Court of Appeals discussed the nature of the warranty contained in a deed, opining:

> In our consumer-oriented society, an inexperienced vendee usually does not fully understand the limited, but important, concept of a warranty deed. **Such warranty relates only to the title to the real property. It does not extend to the quality of the workmanship on the dwelling built on the land.** *Id.* at 717. [Emphasis supplied.]

There are no allegations contained in the Complaint that remotely can be read or interpreted to be allegations of title defects. Plaintiffs' allegations of wrongdoing against Defendants, including Annette, relate solely to physical defects and not title defects. For the foregoing reasons, this Court should dismiss Count I of Plaintiffs' Complaint as it relates to Annette.

### III.   COUNT II OF PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO ALLEGE SUFFICENT FACTS TO STATE A CLAIM FOR MISREPRESENTATION AGAINST ANNETTE.

Plaintiffs allege in Count II of their Complaint that the Defendants, including Annette, made representations that were false and misleading. [¶¶18-21 of Complaint, Doc. #1.] In catchall fashion, Plaintiffs allege that "Defendants, or some of them, and their agents" represented to them that Lot 153 was "accessible by passable roads," "served by water and sanitary sewer," and "buildable, accessible and habitable for construction of the residence the Stanleys planned to build." [¶7 of Complaint, Doc. #1.] Although Plaintiffs allege a claim for "misrepresentation," such a claim is actually a claim for fraud. "Misrepresentation, also commonly referred to as deceit or fraud, has been an intentional tort in Arkansas for well over a century." *S. County, Inc. v. First W. Loan Co.*, 315 Ark. 722, 725, 871 S.W.2d 325, 326 (1994) (citing *Hanger v. Evins*, 38 Ark. 334 (1881)). Accordingly, Plaintiffs' misrepresentation claim must be examined in terms of a fraud claim.

Plaintiffs fail to allege which Defendants made fraudulent representations to them which form the basis of the Count II claims. In fact, Plaintiffs do not specifically allege that Annette made any fraudulent representations to them prior to closing. According to Fed.R.Civ.P. 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." There are no specific allegations contained in the Complaint which assert that Annette made any fraudulent representations to Plaintiffs. Plaintiffs' failure to

plead with specificity is compounded by the fact that they have alleged fraud against multiple defendants. In order to ensure that Annette has adequate notice of the claims against her, Plaintiffs must indicate with specificity which Defendant(s) is responsible for which false statements and fraudulent actions. In *Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1276 (S.D. Fla. 2007), the plaintiffs sued multiple defendants for fraud and ILSFDA violations, but failed to allege what specific personal involvement each defendant undertook and the court dismissed those claims without prejudice, opining:

> Although the Aboujaoudes are correct that Rule 9(b) does not require them to provide perfect quotations or exact times, it does require them to allege the basic elements of fraud, which they have failed to do. The Aboujaoudes' failure to plead with specificity the circumstances constituting fraud are compounded in this case because they have alleged fraud against multiple defendants. In order to ensure that Defendants have adequate notice of the charges against them, the Aboujaoudes must indicate with specificity which Defendant, PDC or Reardon, is responsible for which false statements and fraudulent actions. Accordingly, Counts V and VI are dismissed without prejudice for failure to adequately plead fraud under Rule 9(b).

Plaintiffs' factual allegations of misrepresentation against Annette must be "enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. To state a claim, Plaintiffs must show "circumstances, occurrences, and events in support of the claim presented." *Id.* at 555 n.3 (quotations marked omitted). Plaintiffs failed to meet their pleading burden required by Fed.R.Civ.P. 9(b) and *Twombly*, and Count II of their Complaint must be dismissed as against Annette.[1]

**IV.    COUNT III MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO ALLEGE SUFFICENT FACTS TO STATE A CLAIM FOR ILSFDA VIOLATIONS AGAINST ANNETTE; FURTHER SOME OF PLAINTIFFS' COUNT III CLAIMS, BASED UPON 15 U.S.C. §1703(a)(1), §1703(a)(2)(D), §1703(b), §1703(c), §1703(d), or §1703(e), MUST BE**

---

[1] Plaintiffs should be aware that if they are permitted to amend their Complaint and make specific allegations against Annette, as to her specific representations made to Plaintiffs prior to closing, that they should carefully and thoughtfully plead those allegations to ensure that they comply with their pleading obligations under Fed.R.Civ.P. 11.

**DISMISSED BECAUSE THE STATUTE OF LIMITATIONS HAS RUN ON THOSE CLAIMS.**

Plaintiffs allege in Count III of their Complaint that Defendants, including Annette, violated the provisions of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §1701 *et seq.* by (i) failing to provide Plaintiffs with a copy of a report prior to closing; and (ii) disguising the condition of Lot 153 and failing to mention and disclose the "inaccessibility of the lot; the instability of the property making it subject to landslides and earth movement; the ownership, repair, construction of streets; the absence of any engineering reports; the absence of control of operation and construction, payment for the water and sewer system, the existence of landslides." [¶¶9, 23 of Complaint, Doc. #1.] Plaintiffs do not allege sufficient facts against Annette in Count III of their Complaint to give this Court reason to believe that they have a reasonable likelihood of mustering factual support for their claims. Instead, Plaintiffs merely make conclusory allegations regarding Annette's involvement in the ministry and participation in developing Diamond Bluff Estates. The only allegations contained in the Complaint specifically referring to Annette is that she is "involved in the ministry" and "participated in the common development of properties in Cleburne County, Arkansas pursuant to the common promotional plan involving the Capps Defendants and others." [¶¶3-4 of Complaint, Doc. #1.] Merely alleging that Annette is "involved in the ministry" and that she participated in developing properties in Cleburne County is not enough according to the holding in *Twombly*.

The Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.* (hereinafter "ILSFDA") is an antifraud statute utilizing disclosure as its primary tool, much like the securities laws passed by Congress to protect purchasers from unscrupulous sales of undeveloped home sites. *Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1446-47 (11th Cir. 1985). 15 U.S.C. §1703 entitled "Requirements respecting sale or lease of lot," identifies a list of unlawful

acts and omissions in regard to the sale of lots by a "developer." The ILSFDA provides in 15 U.S.C. §1701(5) that a "developer" is "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision…" Although an individual may be subject to liability under the ILSFDA, Paintiffs must set forth the basis of the claim and the individual's personal involvement in the allegations. In *Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1276 (S.D. Fla. 2007), the plaintiffs sued multiple defendants for ILSFDA violations but failed to allege what specific personal involvement each defendant undertook and the court dismissed those claims without prejudice. So too, this Court should dismiss Plaintiffs' Count III ILSFDA claims against Annette for failure to plead a specific factual basis for her alleged liability.

Further, Plaintiffs' claims stemming from §1703(a)(1), §1703(a)(2)(D), §1703(b), §1703(c), §1703(d), and §1703(e) are barred by the three year statute of limitations contained in §1711(a)(1) and §1711(b). Plaintiffs' private right of action as to violations of the ILSFDA may only be maintained if initiated within the relevant limitations period reflected in 15 U.S.C. §1711, which provides:

> *(a) Section 1703(a) violations*
>
> *No action shall be maintained under section 1709 of this title with respect to—*
>
> > *(1) a violation of subsection (a)(1) or (a)(2)(D) of section 1703 of this title more than three years after the date of signing of the contract of sale or lease; or*
> >
> > *(2) a violation of subsection (a)(2)(A), (a)(2)(B), or (a)(2)(C) of section 1703 of this title more than three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence.*
>
> *(b) Section 1703(b) to (e) violations*

> *No action shall be maintained under section 1709 of this title to enforce a right created under subsection (b), (c), (d), or (e) of section 1703 of this title unless brought within three years after the signing of the contract or lease, notwithstanding delivery of a deed to a purchaser.*

All of Plaintiffs' Count III ILSFDA claims that flow from §1703(a)(1), §1703(a)(2)(D), §1703(b), §1703(c), §1703(d), and §1703(e) are barred by the three year statute of limitations contained in §1711(a)(1) and §1711(b). The three year limitations period begins when the parties execute a sales contract. Although no sales contract is appended to the Complaint and there are no allegations concerning the execution of a sales contract, there is authority that execution of a deed should be considered a contract for sale under the ILSFDA. See *Newell v. High Vista, Inc.*, 479 F. Supp. 97, 99 (M.D. Pa. 1979) (citing *Gaudet v. Woodlake Development Company*, 413 F.Supp. 486, 488 (D.La.1976)). According to the allegations contained in the Complaint, the sale was consummated on May 22, 2006 by Defendants Charles Capps Ministries, Inc., Peggy Capps and Charles Capps executing the warranty deed which is attached to the Complaint as Exhibit 1. Plaintiffs filed this case on September 30, 2011, a date which is more than five years beyond execution of the deed and two years beyond the applicable statute of limitations for claims based upon §1703(a)(1), §1703(a)(2)(D), §1703(b), §1703(c), §1703(d), and §1703(e). For this reason, all of Plaintiffs' Count III ILSFDA claims, based upon the aforementioned provisions of the ILSFDA, must be dismissed and stricken as barred by the applicable statute of limitations.

Plaintiffs' Count III ILSFDA claims are therefore restricted to only those claims contained in §1703(a)(2)(A)-(C). These remaining ILSFDA claims sound in fraud. As discussed, infra, Plaintiffs failed to plead their fraud claims with particularity and grouped all Defendants together in their pleadings. Plaintiffs pled their ILSFDA claims (Count III) in this same fashion. Because of this style of pleading, Annette is unable to determine what specific claims and allegations are pending against her. The *Poinciana Dev. Co.* case discussed in Section III infra, is

directly on point as the plaintiff in that case alleged state law fraud claims and ILSFDA claims under §1703(a)(2)(A)-(C). *Poinciana Dev. Co.*, 509 F. Supp. at 1276. The *Poinciana Dev. Co.* court dismissed the plaintiffs' ILSFDA claims for failure to plead their claims with particularity pursuant to Fed.R.Civ.P 9(b). *Id.* So too, this Court should dismiss all of Plaintiffs' remaining ILSFDA claims for failure to plead them with particularity.

## CONCLUSION

Plaintiffs' Complaint fails to allege facts sufficient to state a claim for which relief can be granted. Plaintiffs' Complaint is insufficient to carry their burden under *Twombly* and Annette's Motion to Dismiss should be granted.

Respectfully submitted,

s/ S. Greg Pittman
Michael James King, OBA #5036
S. Greg Pittman, OBA #18450
WINTERS & KING, INC.
2448 East 81st St., Suite 5900
Tulsa, Oklahoma 74137-4259
(918) 494-6868 Telephone
(918) 491-6297 Facsimile

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on November 14, 2011, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF System, which will send a notice of electronic filing to all parties receiving electronic notice.

s/ S. Greg Pittman
S. Greg Pittman