**cant Land**                                                                **Active**



### PROPERTY DETAIL

|  |  |  |  |
|---|---|---|---|
| **List Price:** | $245,000 | **Per Acre Price $:** | |
| **MLS #:** | 10067909 | **Per FFt Price $:** | |
| **Class:** | Vacant Land | | |
| **Type:** | Residential Lot | | |
| **Appx. Lot Size:** | 128.64X373.97X203.55X177.40 | | |
| **Appx Acreage:** | 1.78 | | |
| **Zoning:** | R 1 | | |
| **Subdivision:** | DIAMOND BLUFF ESTATES | | |
| **Legal:** | LOT153 PLAT 9 | **Will Subdivide:** | No |
| **Area:** | 702 | **Entered Twice:** | No |
| **Taxes:** | 400.00 | | |
| **SI Taxes:** | 192.00 | | |
| **Calculated $/Acre:** | 137640.45 | | |

**ress: 0 LAKEFRONT ROAD**
: Greers Ferry
nty: Cleburne
72131

**Directions:** HWY 16 TO DIAMOND BLUFF ROAD GO 2 MILES TURN LEFT ON LAKEFRONT ROAD THE LOT IS AT THE END OF THE ROAD SIGN ON THE PROPERTIY

### LISTING INFORMATION

| sture Acres: | Cultivation Acres: | Timber Acres: | Total Acres: | 1.78 |
|---|---|---|---|---|

rm Features:
ilities:   Sewer-Public, Water-Public, Electric-Co-op, Telephone-Private

### PROPERTY FEATURES

| REA AMENITES | Airport | RESTRICTIONS | **Legally Subdivided, Approved Plat, Any Build** |
|---|---|---|---|
| NANCING (NEW) | **Owner Neg.-Carry 1st** | | **Bill of Assurance, Mobiles Not Allowed** |
| T | **Sloped, Wooded, In Subdivision, Out of City,** | ROAD FRONTAGE | **County Road** |
|  | **Mountain View, Lake View, Lake Front** | ROAD SURFACE | **Paved** |
| SSESSION | **Immediately-With Deed** | TRANSPORTATION | **None** |
|  |  | UTILITIES | **Sewer-Public, Water-Public, Electric-Co-op, Telephone-Private** |

### PUBLIC REMARKS

XCELLANT LAKEFRONT WITH EASY ACCESS AND OWNERSHIP LINE VERY NEAR THE WATER. PRIVATE SEWER SYSTEM . THELOT REQUIRES A EPTIC TANK BUT NO FILL LINES JUST A SEWER LIFT PUMP. THERE IS A CORP. OF ENGINEERS BOAT LAUNCHING RAMP.

| : | MT: 571 | CLSD: |
|---|---|---|
| G: Peggy Reeder | LO: Red Apple Real Estate | |

S INFORMATION IS DEEMED RELIABLE, BUT NOT GUARANTEED, AND IS PROVIDED EXCLUSIVELY FOR CONSUMER'S PERSONAL, NON-COMMERCIAL USE AND MAY NOT BE USED PURPOSE OTHER THAN TO IDENTIFY PROSPECTIVE PROPERTIES CONSUMERS MAY BE INTERESTED IN PURCHASING. UNDER NO CIRCUMSTANCES SHOULD THE INFORMATION TAINED HEREIN BE RELIED UPON BY ANY PERSON IN MAKING A PURCHASE DECISION, INCLUDING BUT NOT LIMITED TO, INFORMATION PRECEDED WITH THE WORD OR REVIATION DENOTING APPROXIMATE. COPYRIGHT 2006 COOPERATIVE ARKANSAS REALTORS® MULTIPLE LISTING SERVICES INC.

n://carmls.fnismls.com/publink/Report.aspx?outputtype=HTML&GUID=a6e3db2a-115e-46

**Ex. 1** 

Greers Ferry Lake MLS 10090016
From: "Christie Dorris" <cdorris@ozarkisp.net>
To: <debbieanddoug@comcast.net>
Subject: Greers Ferry Lake MLS 10090016
Date: Monday, March 20, 2006 2:25 PM

Click Here to View Listings
<http://CARMLS.fnismls.com/publink/default.asp?GUID=912d854a-95a0-4d73-a
e8e-7f09d297890a&Report=Yes>

Thank you for the interest in property in the Greers Ferry Lake area.
By clicking above you may view the data sheet containing information
about MLS 10090016 per your request.  This property has been relisted
and is now priced at $360,000.  We do have a plat on file that I would
be happy to send if you wish.  In the meantime, I will select & send by
e-mail some other lakefront properties currently available.  If you have
any other requirements in addition to lakefront with boat access near
by, please contact me at 501-269-3802 or by e-mail cdorris@ozarkisp.net
<mailto:cdorris@ozarkisp.net> .

I look forward to hearing from you soon.

Regards,

Christie Dorris
Three Chimneys Realty
Greers Ferry Lake - Arkansas
501-269-3802
_____

Notice: This email could be considered as an advertisement under federal
law.

If you prefer not to receive real estate listing information and updates
via e-mail, Click Here
<http://pbp.fnismls.com/paragonsubscriptions/optout.aspx?recipient=debbi
eanddoug%40comcast.net&sender=e35df943-3655-4117-adc3-154059f3fff9>  or
copy the following URL and paste into the address window of your browser
to opt out.

http://pbp.fnismls.com/paragonsubscriptions/optout.aspx?recipient=debbie
anddoug%40comcast.net&sender=e35df943-3655-4117-adc3-154059f3fff9



Ex. 2

026

Greers Ferry Lake 15 Acres.txt

From: "christie dorris" <cdorris@ozarkisp.net>
To: <debbieanddoug@comcast.net>
Subject: Greers Ferry Lake 15 Acres
Date: Tuesday, March 21, 2006 5:19 PM

Hi, thank you so much for the phone call last night.  Looks like you all may be
getting hit with some bad weather.  It is actually a little colder here than usual
but we needed the rain desperately, so everyone is happy.

Attached are three documents:
1. Cut of lake map showing location of the 15 acres.  It is on the north side of the
lake about half way between the town of Greers Ferry & Fairfield Bay.  You will
notice the small cove inlet marked - this is approx. location of proposed boat dock.
 The sellers did receive a permit letter from the Corps last year allowing a 2 slip
boat dock.  It expired at the end of 2005 but another application could be made and
hopefully approved, although we never second guess the Corps.

2. Plat of the 15 acres which borders Irish Hills Rd.  You will notice adjoining
property containing 19 acres selling for $70K & has no lakefront - does have
lakeview with clearing.

3. Plat of the 15 acres divided into proposed lakeview & lakefront lots.  The road
indicated on the plat does not exist at present - it has been somewhat cleared but
not good enough for a car.  This was just the seller's thinking of subdividing in
the future.

This subdivision has covenents & restrictions which I can send if you wish.  No
mobiles & at least 1200 sq ft homes.  There are nice homes in this area.

The boat dock location cove has very little water at this time.  In fact, a bunch of
boat docks on this lake are out of water right now as of course many of them are in
coves.  We have never seen it this low in our 25 years having property here.  So, we
have been delighted with the rain.

Hope this information is helpful.  Please let me know when you wish further
information.  Looking forward to hearing from you, Christie Dorris 501-269-3802

Page 1

PLTF 19

027

visit 3.27.06
From: "Debbie and Doug Stanley" <debbieanddoug@comcast.net>
To: "christie dorris" <cdorris@ozarkisp.net>
Subject: Visit this coming weekend
Date: Monday, March 27, 2006 10:16 PM

Hi Christie,

Your new listing on Potter's Point sounds very good  - yes - we'd like to see that !

We'll make the trip down this Friday, and be ready to tour on Saturday.  Should we meet at your office ?, at 8 am ?    Pls let us know what time is best for you.

We'd like to see as much as possible (as you have time for), to get a good idea of what the area is like, and what types of properties are available.

As you've heard, we'd prefer to have a dock by our house, but if that is not possible, we would be interested in a parcel to build on that goes to the water (to the strip), ... and have access to a nearby dock or slip.  So - we would like to see some different options.   The 15 acres on Irish Hills (we'll bring our boots), and also the 3.4 acres on Case Ford by the golf course, and even though some are smaller in size, we would also like to see the Silver Ridge / Tannenbaum / Island Shores / Buckhead area (mls #s  10089872,  208679,  10081630,  10080006,  10006156)  It seems some of these have boat slips that can be purchased, and we'd like to see how close the slips would be to the property.   The Narrows / Emerald Isle also sounds interesting (mls# 10089329)

We'll leave the order in which we see properties to you, and if you have any questions before Friday (if something I've said above makes no sense at all !) please let us know and we'll give you a call to confirm.

We look forward to the visit, ... and hopefully finding something.

Thanks for all of your help so far,
Doug and Debbie


     ----- Original Message -----
     From: christie dorris
     To: Debbie and Doug Stanley
     Sent: Monday, March 27, 2006 11:57 AM
     Subject: Additional Information on Lots


    Hi, hope you all enjoyed the busy weekend.  It is raining here today & think it will continue until Thursday.  We welcome it.

    I visited with the surveyor for the Case Ford lot regarding the red line & the diagonal line is the red line (491 level line) meaning no permanent structure may be built below this line.  He gave me the approx. measurement from the white line on the far right facing the lake so I could line it up to indicated building area. As we thought, building must be done on the left.  The path is supposed to be marked.

    Another note on the 15 acres Irish Hills Rd - public water has not reached it yet & no one seems to know when that will happen.  Hopefully the rain will slow so we can at least walk part of it tomorrow.  Still no water in the cove designated for the boat docks.

    We will be listing a lakefront in Potter's Point this week that might be interesting as it is zoned for a private boat dock.  It does have a small cabin on it plus a nice garage for boats, etc.  If we do not have it listed when you come, we can still look.  It should be in low $200's.

                              Page 1

PLTF 20

028

visit 3.27.06
  Will give you a call this afternoon to discuss the agenda you wish to follow.
Regards, Christie

PLTF 21

**029**

Area Builders 4.05.06.txt
From: "christie dorris" <cdorris@ozarkisp.net>
To: "Debbie and Doug Stanley" <debbieanddoug@comcast.net>
Subject: Area Builders
Date: Wednesday, April 05, 2006 1:48 PM

Hi, just a note to give you a couple of names of builders that are familiar with building around the lake area.

I checked with our owner & other agents about architect names but could only come up with one.

Moix's Design Inc  located in Conway, AR 501-329-4722

Hendrix construction, David Hendrix 501-281-5684 (Cell), uses Moix's Design for some of his homes.  Hendrix Construction has a really good reputation as a quality builder.

Tommy Tackett, local home builder, also has a good reputation for quality 501-589-3961

One of the other agents recommended Ronnie Spradlin 501-589-2615 but do not think he has experience around the lake but has built quality homes in the Greenbrier area.

The builders might be able to recommend architects also.

I gave Linda Streib, our owner & broker, your information for contacting when the survey is done & we have in hand.  Hopefully, we are looking at next week sometime. Linda will ensure you receive it.  Her cell is 501-940-6563, so please call her with any needs, etc.  She will be very helpful.  My phone will also work in San Juan, so please call when you need me.  I will be checking messages several times a day anyway.  I may be able to check e-mail but not sure at this time.

Thank you so much, Christie

PLTF 22

030



004

E*4



OWNER FINANCING

CITY WATER

PAVED STREETS

LAKE ACCESS

ELECTRICITY

PHONE LINES





**LAKE VIEW**
**&**
**LAKEFRONT LOTS**

Brawley & Associates
REAL ESTATE.
501-825-7800
www.greersferrylake.net

Brawley & Associates
REAL ESTATE.
501-825-7800
www.greersferrylake.net



DIAMOND BLUFF

MASTER PLAN

BOULDER ENGINEERING CORPORATION, HEBER SPRINGS, ARKANSAS 72543

DEF's 00225

# A P P R A I S A L   R E P O R T

## ON THE

EXISTING DIAMOND BLUFF ESTATES
SUBDIVISION AND 3 TRACTS OF UNDEVELOPED
LAND LOCATED WEST OF HEBER SPRINGS,
CLEBURNE COUNTY, ARKANSAS

### PREPARED FOR

Mr. Charles Capps
Charles Capps Ministries, Inc.
Route 3, Box 101
England, Arkansas   72046

### PREPARED BY

Michael T. Pyron, M.A.I., S.R.A.
Suite 200A, 300 Spring Building
Little Rock, Arkansas   72201
Federal Tax ID #71-060725

Ex.
6

295



# MICHAEL T. PYRON, M.A.I.

APPRAISALS • ANALYSES • COUNSELING • MARKET FEASIBILITY STUDIES

April 1, 1986

Mr. Charles Capps
Charles Capps Ministries, Inc.
Route 3, Box 101
England, Arkansas  72046

RE:  Existing Diamond Bluff Estates Subdivision and 3 Tracts of Undeveloped
     Land Located West of Heber Springs, Cleburne County, Arkansas

Dear Mr. Capps:

As you requested, I have conducted the required investigation, gathered the
necessary data and made certain analyses that have enabled me to form my
opinion of the market value of the fee simple interest in the above-referenced
subject property.  The following report contains the legal descriptions of the
various parts of the subject property as well as data gathered during my
investigation and a detailed presentation of the methods of appraisal used in
arriving at the final conclusion.  The purpose of this analysis was to esti-
mate the market value of the subject property as of November 14, 1985, the
date of transfer of all rights, title, interests and claims held by Michael R.
Ellison and Susan Ellison, his wife, to Charles Capps Ministries, Inc. as
indicated in a Quit Claim Deed dated November 14, 1985 and filed for record
November 18, 1985 in Book 277, Pages 87-89, in the Cleburne County Courthouse
records.

Certain assumptions underlie these analyses and certain conditions limit the
use of this report and/or data contained herein.  Your attention is directed
to the "Limiting Conditions and Assumptions" section of this report for a
detailed listing and explanation.  These Limiting Conditions are incorporated
herein for all purposes.

I certify that I have made a thorough review of the real property and that all
data gathered during my research is believed to be reliable.  I further
certify that I have no present or contemplated interest in the property
concerned and that the fee for providing this analysis is in no way dependent
or contingent upon the value conclusion.

-continued-

**296**

Suite 200A, 300 Spring Building, Little Rock, Arkansas  72201   (501) 376-4488

Based on the inspection of the property and the investigation and analyses undertaken, it is my opinion that the estimated market value of the subject property, as of November 14, 1985, was:

ONE MILLION SIX HUNDRED FORTY SIX THOUSAND DOLLARS

$1,646,000

Respectfully submitted,

Michael T. Pyron, M.A.I., S.R.A.

MTP/em

# T A B L E   O F   C O N T E N T S

Title Page
Letter of Transmittal

## I N T R O D U C T I O N

Table of Contents
Limiting Conditions and Assumptions

## F A C T U A L   D A T A                                    Page No.

Identification of the Property ----------------------------------------- 1-2
Objective and Date of the Analysis------------------------------------- 3
Definition of Market Value --------------------------------------------- 4
Property Rights Appraised --------------------------------------------- 4-5
Regional Data ---------------------------------------------------------- 6-8
Neighborhood Data ----------------------------------------------------- 9-10
Site and Property Description Data ------------------------------------ 11-14
Zoning and Bill of Assurance ------------------------------------------ 15
Assessment and Taxes -------------------------------------------------- 16

## A N A L Y S E S   A N D   C O N C L U S I O N S

Highest and Best Use Analysis ----------------------------------------- 17-19
Combined Market Data and Income Approaches/Subdivision Analysis ----- 20-38
Reconciliation --------------------------------------------------------- 39
Certification of the Appraiser ----------------------------------------- 40-41

## A D D E N D A   A N D   E X H I B I T S

State Map
County Map Showing Location of Subject
Cleburne County Subdivision Map
Preliminary Plat - Master Plan
Preliminary Plat - Showing Phases
Final Plat - Phase I
Final Plat - Phase II
Bill of Assurance - Diamond Bluff Estates
Mortgages and Contracts of Sale Presently Endumbering the Subject Property
Photographs
Qualifications of the Appraiser

## IDENTIFICATION OF THE PROPERTY

The subject property of this analysis consists of the following real estate interests and parcels of ground situated on Greers Ferry Lake west of Heber Springs, Arkansas, in Cleburne County:

I.   Notes and Contracts of Sale discounted to a present value for 13 platted lots sold as of 11/14/85 which consisted of Lots 1 through 7 inclusive, Lot 9, and Lots 14 through 18 inclusive, all in Phase I of Diamond Bluff Estate Subdivision.

II.  Thirty-two unsold platted lots comprising the remainder of Phases I and all of Phase II in Diamond Bluff Estates Subdivision.

III. The remaining 411.745 acres of land preliminarily platted as Diamond Bluff Estates Subdivision and comprising approximately 183 lots with roads and greenbelts and other rights-of-way.

IV.  A 40 acre tract of undeveloped land referred to as the Hixson property.

V.   A 21.5 acre tract of undeveloped land referred to as the Old Indian Treaty Line property.

VI.  A 20.0 acre tract of undeveloped land referred to as the Highway 16 property.

The entire acreage comprising all properties included in this analysis is legally described as:

TRACT 1:
Part of the $S\frac{1}{2}$ of the $NW\frac{1}{4}$, Section 10, T10N, R11W, described as beginning at the SW corner of said $S\frac{1}{2}$, $NW\frac{1}{4}$, and running thence North 907.5 ft. along the West line thereof; thence Northeasterly to the NE corner of said $SE\frac{1}{4}$, $NW\frac{1}{4}$, $SW\frac{1}{4}$ of said $NW\frac{1}{4}$; thence Southeasterly to the SE corner of the $N\frac{1}{2}$ of the $SW\frac{1}{4}$ of the $NE\frac{1}{4}$ of said $SW\frac{1}{4}$ of the $NW\frac{1}{4}$; thence South 165 ft.; thence Southeasterly to the center of the $NE\frac{1}{4}$ of the $SE\frac{1}{4}$ of said $SW\frac{1}{4}$ of the $NW\frac{1}{4}$; thence East 330 ft. to the center of the $NW\frac{1}{4}$ of the $SW\frac{1}{4}$ of the $SE\frac{1}{4}$ of said $NW\frac{1}{4}$; thence Southeast to the center of said $SW\frac{1}{4}$ of $SE\frac{1}{4}$ of $NW\frac{1}{4}$; thence South 165 ft; thence East 330 ft; thence South 165 ft. to the SE corner of the $SW\frac{1}{4}$ of said $SE\frac{1}{4}$ of the $NW\frac{1}{4}$; thence West along the South line of the aforesaid $S\frac{1}{2}$ of the $NW\frac{1}{4}$ to the Point of Beginning and containing 29.98 acres, more or less, Cleburne County, Arkansas and being subject to a perpetual flowage easement of 3.0 acres to the United States of America, said easement being all that part of the above described land lying below elevation 491 ft. mean sea level.

-continued-

**305**

## IDENTIFICATION OF THE PROPERTY

### (Continued)

TRACT 2:
All that part of the SE¼ of the SE¼ and the E½ of the SW¼, SE¼ North
of the Cherokee Boundary line (a/k/a the Old Indian Treaty Line),
and South of the County Road, located in Section 10, Township 10
North, Range 11 West, in Cleburne County, Arkansas, containing 21.50
acres, more or less.

TRACT 3:
The West Half (W½) of the Northeast Quarter (NE¼) of the Northeast
Quarter (NE¼) and West Half (W½) of the Southeast Quarter (SE¼),
Northeast Quarter (NE¼) of Section 15, Township Ten (10) North,
Range Eleven (11) West, containing 40 acres, more or less, subject
to one-half of mineral rights reserved previously.

Seller's interest in Tract 3 arises under a sales contract dated
November 18, 1982 with Robert L. Hixson and Martha A. Hixson as
sellers and Charles Capps and Michael Ellison as buyers.

TRACT 4:
A part of the Northwest Quarter (NW¼) of the Northeast Quarter (NE¼)
of Section 13, T10N, R12@, Cleburne County, Arkansas described as
beginning at the NE corner of the NW¼ of the NE¼ then West 446 ft.
to the centerline of a county road, thence Southwesterly along said
county road to the East side of said right-of-way of Ark. Hwy. #16,
then Southerly along said right-of-way to the South line of said
NW¼, NE¼, then East to the SE corner of the NW¼, NE¼, then North to
the Point of Beginning, containing 20 acres, more or less.

TRACT 5:
The fractional part of Sections Nine (9) and Ten (10) Township Ten
(10) North, Range Eleven (11) West, Cleburne County, Arkansas, more
particularly described as that part of Sections 9 and 10 lying North
of the Southern right of way line of Millers Point Road and South of
the Government Fee Taking Line, less and except that part lying in
the Northwest Quarter (NW¼) of Section 10, South of said Government
Fee Taking Line, containing 535.81 acres, more or less; subject to
an existing United States Government flowage easement lying between
491 ft. contour and Government Fee Taking Line, containing 20 acres
more or less, and also subject to the previous reservation of a
perpetual road easement for the use of International Paper Company
or its successors and assigns over and across Millers Point Road.

## SITE DATA AND PROPERTY DESCRIPTION

The subject property of this analysis consists of the following parcels and interests:

I.   The contractural rights of the sellers in the remaining terms of notes, mortgages, contracts of sale, and other sales agreements associated with the sale of Lots 1, 2, 3, 4, 5, 6, 7, 9, 14, 15, 16, 17 and 18 all in Phase I of Diamond Bluff Estates Subdivision.

II.  The fee simple estate in Lots 8, 10, 11, 12, 13, 19 and 20, all in Phase I of Diamond Bluff Estates Subdivision.

III. Lots 22 through 46 inclusive all in Phase II of Diamond Bluff Estates Subdivision.

IV.  The remaining 411.745 acres preliminary platted as Diamond Bluff Estates Subdivision and divided into an estimated 183 additional lots to be developed over an estimated 5 separate phases and including grounds allocated to roadways and other rights-of-way as well as a par 3 golf course and clubhouse area situated near the southwest corner of the subdivision.

V.   A 40 acre tract of undeveloped land referred to as the Hixson property and situated near the southeast corner of Diamond Bluff Estates Subdivision.

VI.  A 21.5 acre tract of undeveloped land referred to as the Old Indian Treaty Line Property and situated near the southeast corner of the subject subdivision and a 20.0 acre tract of undeveloped land referred to as the Highway 16 property and situated approximately 3½ miles west of the subject subdivision at the intersection of Diamond Bluff Road and State Highway 16.

Diamond Bluff Estate Subdivision, which contains a gross area of approximately 565.79 acres is situated along the northern side of the subject neighborhood just west of Miller's Point. Two phases of the subdivision have been formally platted and plats filed along with the Bill of Assurance with Phase I consisting of Lots 1 through 20 inclusive and Phase II consisting of Lots 21 through 46 inclusive. These lots are situated along the ridge or bluff area formed by Pryor Mountain and provide some of the more spectacular view lots of the Greers Ferry Lake area. All of the presently platted lots are served by either Diamond Bluff Road or another as yet unnamed interior roadway cut into the interior part of the subdivision. Lot sizes range from a large lot of 12.18 acres (Lot 6) to a small lot of 0.78 acres in Lot 46. The typical lot in this Phase I and Phase II of the subject subdivision would be in the 1.5 to 2.5 acre size. Of these platted lots, only Lots 1 through 6 have lake frontage although the majority of these lots are situated on top of the bluff formed by Pryor Mountain. In terms of the buildable site, the lake frontage provides no additional utilization in terms of Lots 1 through 6 in Phase I.

-continued-

315

## SITE DATA AND PROPERTY DESCRIPTION

### (Continued)

The remainder of the subject subdivision has yet to be formally platted but a master plan has been devised and designed by Boulder Engineering Corporation of Heber Springs, Arkansas.  This master plan depicts a series of lots that completes the development of the bluff area west of Phase II and extends down in a northerly direction to the lakeside with additional lake front lots along a roadway that has been partially constructed along the lake lines and wilderness lots on the interior part of the subdivision between the bluff and the roadway servicing lake front lots.  This portion of the subject subdivision has been partially completed although the segment of the subdivision along the lake front and wilderness lots that are serviced by existing roads are not yet serviced by electricity or telephone.  Furthermore, the water system has no yet been installed into these areas.

The master plan and layout of Diamond Bluff Estates subdivision as prepared by Boulder Engineering Corporation provides the basis for this analysis in terms of the number of lots considered for sale.  It is assumed that the subdivision will be developed to its entirety as depicted in the master plan and it is further assumed that this development will occur on a phased basis as follows:

Phase III – 26 Lots
Phase IV  – 15 Lots
Phase V   – 40 Lots
Phase VI  – 31 Lots
Phase VII – 71 Lots

In total, Diamond Bluff Estates Subdivision will be composed of 229 lots of which 228 are, or have been, available for sale.  Lot 21 is owned by Mr. Charles Capps and has been excluded from this analysis.  Of the 228 available lots for sale, 13 lots had been sold or were under contract at date of transfer or November 14, 1985, leaving 215 lots available for sale in the future. A copy of the master plan as developed by Boulder Engineering Corporation is included in the addenda of this report and is color keyed to show the various phases which are projected to be developed in the future.

The topography of the area is typically level to rolling and hilly along the top of the bluff, mountainous along the western end of the subject subdivision leading to lake front and wilderness lots, transcending to hilly and rolling lake front and wilderness lots.  Elevations of the subdivision are highest along the bluff lots and drop to the lake level for lake front lots.  Although most of the lots in the subject subdivision are buildable without much site preparation, there are some extreme topographies which create natural drainage areas and runoff and would provide some construction problems, therefore, making them somewhat less desirable lots.  Generally speaking, the subject subdivision acreage is covered with native trees, underbrush, and/or outcroppings of rock with the exception of cleared rights-of-way for roads and streets which have been installed by the developer.  Streets are typically

-continued-

## SITE DATA AND PROPERTY DESCRIPTION

### (Continued)

graded dirt roads surfaced with gravel or compacted shale with open ditches along both sides.  The right-of-way for roadways is approximately 50 feet in width and it is assumed that future unplatted roadways will be of similar widths throughout the subdivision.  A water system has been installed to service the initial lots developed in the subdivision in Phases I and II and a water tower and water line is in place servicing most of these lots.  No information was provided in terms of the capacity of this water system and it is assumed that the system is adequate in terms of its size to service the entire subdivision.

As there is no sewer system in place to service the subdivision and no private system has been developed to service the entire subdivision, this analysis is contingent upon the ability of the entire subdivision to accept individual sewage disposal systems for each lot.  Preliminary percolation test conducted by Boulder Engineering Company of Heber Springs, Arkansas indicates that the entire subdivision may be suitable for the installation of private sewage disposal systems, however, each individual lot has not been tested.  The final estimate of value in this analysis is contingent on, and assumes that, each individual lot can accept an individual sewage disposal system and that a private community system will not have to be developed in order to service all lots as presently platted.

Although there is very little in the way of improvements to be maintained in a proposed subdivision, there are, however, some maintenance costs on an ongoing basis in the subject property.  These consist primarily of the maintenance of roadways and drainage systems providing for drainage for runoff throughout the subdivision.  A primary problem is the somewhat instability of ground cut through the side of the mountain for the roadway leading down to lake front lots along the western end of the subject subdivision.  This roadway was partly cut into the side of the mountain as well as partially filled and portion of the roadway tend to settle and fall away creating a sloughing off or movement of the soil base under the roadway.  Furthermore, dead trees and limbs tend to wash into drainage areas which must periodically then be cleared to provide for adequate drainage and runoff and minimize erosion.

The acreage contained in parcels situated near the southeast corner of the Diamond Bluff Estates Subdivision represents the other parts of the subject property valued in this analysis.  These areas are primarily undeveloped raw land and lie south of the road running along the south side of Diamond Bluff Estates Subdivision in a east-westerly direction and ultimately ending at Miller's Point east of the subject property.  There has been a dirt roadway cut to the interior portions of the acreages but it is a rough roadway and not suitable for heavy traffic.  These tracts are typically mountainous and rolling land and are covered with native trees and underbrush with no other improvements.

-continued-

## SITE DATA AND PROPERTY DESCRIPTION

### (Continued)

The last portion of the subject property is the tract of ground situated at the intersection of Highway 16 and Diamond Bluff Road west of Diamond Bluff Estates subdivision.  This 20 acre tract is, again, an undeveloped tract of ground that was included primarily to serve as an entrance to the subject subdivision from State Highway 16.  The topography of this ground is rolling and mountainous and it is presently undeveloped land covered with trees and underbrush with portions of it being cleared.

Gross Acreage - Subdivision Only - 565.79 Acres
Less Lots Sold in Phase 1 & 2
as of 11-14-85

Lot  1 - 10.00  Ac
Lot  2 -  5.08  Ac
Lot  3 -  7.15  Ac
Lot  4 -  7.55  Ac
Lot  5 -  8.22  Ac
Lot  6 - 12.18  Ac
Lot  7 -  1.61  Ac
Lot  9 -  2.68  Ac
Lot 14 -  3.17  Ac
Lot 15 -  3.18  Ac
Lot 16 -  2.335 Ac
Lot 17 -  2.34  Ac
Lot 18 -  5.00  Ac

Total No. Acres - Sold Lots - 70.60  Ac          (70.60) Acres

Net Acreage Transferred (Subdivision Only)      495.19   Acres

### Number of Lots - Diamond Bluff Estates

| Phase | | No. Acres | No. Lots | Density |
|---|---|---|---|---|
| Phase I | - | 91.395 (Actual) | 20 Lots | 4.6 Lots Per Acre |
| Phase II | - | 62.65 (Actual) | 26 Lots | 2.4 Lots Per Acre |
| Phase III | - | 62.40 (Estimated) | 26 Lots | 2.4 Lots Per Acre |
| Phase IV | - | 36.0 (Estimated) | 15 Lots | 2.4 Lots Per Acre |
| Phase V | - | 80.0 (Estimated) | 40 Lots | 2.0 Lots Per Acre |
| Phase VI | - | 62.0 (Estimated) | 31 Lots | 2.0 Lots Per Acre |
| Phase VII | - | 177.5 (Estimated) | 71 Lots | 2.5 Lots Per Acre |
| Total Acreage | | 571.945 | | |
| Total Lots | | | 229 Lots | |

-14-

**318**

COMBINED MARKET DATA AND INCOME APPROACHES/SUBDIVISION ANALYSIS

(Continued)

Based upon the existing sales activity of lots within the subject subdivision, as well as a comparison of competing subdivision lot sales in the immediate area, the following prices were established for the remaining unsold lots in platted Phases I and II of the subject subdivision.  In addition to the prices established for platted lots, additional average lot prices and values were established for scheduled Phases III, IV, V, VI and VII in the subdivision as it is depicted on the master plan prepared by Boulder Engineering Company.

PHASE I LOTS (AS PLATTED)
(REMAINING LOTS AS OF 11-14-85)

| LOT NO. | | VALUE |
|---|---|---|
| 8 | - | $13,000 |
| 10 | - | 42,500 |
| 11 | - | 15,000 |
| 12 | - | 12,000 |
| 13 | - | 12,000 |
| 19 | - | 37,600 |
| 20 | - | 27,400 |
| Gross Value | - | $159,500 |
| Average Lot Value | - | $22,786 |
| Total No. Lots | - | 7 |

PHASE II LOTS (AS PLATTED)
(REMAINING LOTS AS OF 11-14-85

| 22 | - | $14,500 |
|---|---|---|
| 23 | - | 14,500 |
| 24 | - | 14,500 |
| 25 | - | 40,500 |
| 26 | - | 18,000 |
| 27 | - | 22,000 |
| 28 | - | 18,000 |
| 29 | - | 13,500 |
| 30 | - | 31,500 |
| 31 | - | 25,600 |
| 32 | - | 18,000 |
| 33 | - | 22,000 |
| 34 | - | 20,000 |
| 35 | - | 26,000 |
| 36 | - | 27,000 |
| 37 | - | 28,000 |
| 38 | - | 22,000 |
| 39 | - | 22,000 |

331

COMBINED MARKET DATA AND INCOME APPROACHES/SUBDIVISION ANALYSIS

(Continued)

PHASE II LOTS (AS PLATTED)
(REMAINING LOTS AS OF 11-14-85

(Continued)

| | | |
|---|---|---|
| 40 | - | 22,000 |
| 41 | - | 23,000 |
| 42 | - | 18,000 |
| 43 | - | 31,500 |
| 44 | - | 25,000 |
| 45 | - | 6,000 |
| 46 | - | 4,000 |

| | |
|---|---|
| Gross Value | $527,100 |
| Average Lot Value | $21,084 |
| Total No. Lots | 25 |

PHASE III LOTS (PRELIMINARY PLAT)

| | |
|---|---|
| Total No. Lots | 26 |
| Average Lot Value | $21,000 |
| Gross Value | $546,000 |

PHASE IV LOTS (PRELIMINARY PLAT)

| | |
|---|---|
| Total No. Lots | 15 |
| Average Lot Value | $12,000 |
| Gross Value | $180,000 |

PHASE V LOTS (PRELIMINARY PLAT)

| | |
|---|---|
| Total No. Lots | 40 |
| Average Lot Value | $20,000 |
| Gross Value | $800,000 |

PHASE VI LOTS (PRELIMINARY PLAT)

| | |
|---|---|
| Total No. Lots | 31 |
| Average Lot Value | $20,000 |
| Gross Value | $620,000 |

PHASE VII LOTS (PRELIMINARY PLAT)

| | |
|---|---|
| Total No. Lots | 71 |
| Average Lot Value | $8,000 |
| Gross Value | $568,000 |

| | |
|---|---|
| TOTAL GROSS SALES VALUE | $3,400,600 |

332



GREERS FERRY LAKE

Scale: 1"=660'

boat launching
picnic area

club house
229 Lots Total
228 Available
For Sale
Total
(13) Sold @ 11-14-85
215 Available

bluff lots

par 3
golf course

Extent of
Roadway

TO GREERS FERRY

TO HWY 16

MILLER'S POINT

EAST
BLUFF

WILDERNESS AREA

Phase III- 26 Lots

Phase IV- 15 Lots

Phase V- 40 Lots

Phase VI- 31 Lots

Phase VII- 71 Lots

Phase I- 20 Lots

Phase II- 26 Lots (25 available for sale)

Lots sold at 4-1-86

352

# DIAMOND BLUFF

MASTER PLAN

BOULDER ENGINEERING CORPORATION, HEBER SPRINGS, ARKANSAS 72543

PROFESSIONAL QUALIFICATIONS

MICHAEL T. PYRON, M.A.I., S.R.A.

JANUARY, 1986

I.  EDUCATION

1971 Graduate, University of Arkansas at Little Rock,
Degree - Bachelor of Science - Major - Mathematics, 1971;
Minor - Political Science

II.  PROFESSIONAL TRAINING AND EDUCATION

| Professional Courses Completed | Date | Sponsoring Organization |
|---|---|---|
| 1-A Basic Appraisal Principals | 03-72 | American Institute of Real Estate Appraisers (AIREA) |
| 1-B Capitalization Theory & Technique | 09-73 | AIREA |
| II Urban Properties | 06-75 | AIREA |
| Standards of Professional Practice | 04-82 | AIREA |
| Introduction to Real Estate Investment Analysis | 09-82 | AIREA |
| Capitalization Theory & Techniques II | 07-83 | AIREA |

| Professional Conference & Seminars Attended | Date | Sponsoring Organization |
|---|---|---|
| Appraising Apartments Seminar | 05-73 | Society of Real Estate Appraisers (SREA) |
| Mortgage Equity Capitalization Seminar | 03-74 | SREA |
| Residential Appraisal Seminar | 02-74 | AIREA |
| Narrative Report Writing Seminar | 03-75 | SREA |
| Tax Consideration in Real Estate Transactions | -75 | SREA |
| Young Men's Council Member | 04-77 | SREA |
| Residential Appraisal Seminar | 12-78 | SREA |
| Young Advisory Council Member | 04-79 | SREA |
| FNMA Single and Multi-Family Appraisal Seminar | 01-80 | SREA |

**284**

Suite 200A, 300 Spring Building, Little Rock, AR 72201  (501) 376-4488

| | | |
|---|---|---|
| HP-38E Seminar-Real Estate Applications of the Financial Calculator | 04-80 | AIREA |
| Appraising Residential Condominiums Seminar | 03-81 | SREA |
| Financial Calculator Seminar | 02-83 | SREA |
| Federal Income Tax and Real Estate Seminar | 03-83 | AIREA |
| Advanced Income Property Finance Seminar | 11-83 | Mortgage Bankers Assn. |
| Pension Funds & Real Estate | 03-84 | Northwest Center for Professional Educ. |
| Introduction to Real Estate Investment Analysis | 04-84 | AIREA |
| "Microcomputer Feasibility" and "Effective Ways to Use the Business Computer" | 08-84 | The University of AR at Little Rock |
| Advanced Spreadsheet - Computer Applications | 11-84 | AIREA |
| South Central Regional Conference | 03-85 | AIREA |

   a) I-30 Condo Story
   b) Appraisal Reform in the Thrift Industry
   c) Savings & Loans -
      The Problems - The Solutions
   d) Office Productivity Software for the
      Appraiser Office
   e) Appraisal Financial Applications
      Software
   f) Lawsuits and Liabilities
   g) Smart Buildings
   h) Dealmaking Today
   i) Emerging Trends in Real Estate and
      Real Estate Valuation

| | | |
|---|---|---|
| Recent Developments in Income Property Valuation | 04-85 | SREA |
| R41-b and the Appraiser | 08-85 | SREA |
| Federal Home Loan Bank Board Memorandum R41-b/Appraisal Guidelines & Standards | 10-85 | AIREA |
| FNMA Appraisal Seminar | 12-85 | Federal National Morgage Association (FNMA) |

III.   PROFESSIONAL DESIGNATIONS AND MEMBERSHIPS

      American Institute of Real Estate Appraisers
      (M.A.I.) Member of the Appraisal Institute - Certificate No. 6884 (1984)
      American Institute of Real Estate Appraisers
      (R.M.) Residential Membership - Certificate No. 974 (1976)
      Society of Real Estate Appraisers
      (S.R.A.) Senior Residential Appraiser (1977)
      Little Rock - North Little Rock Board of Realtors
      Institute Affiliate Member
      Licensed Real Estate Broker - Arkansas (1972)

**285**

<u>Savings and Loans</u>

First Federal of Arkansas
Savers Federal Savings and Loan
FirstSouth Federal Savings and Loan

<u>Governmental Agencies, Lif Insurance Companies, Mortgage Companies,
Corporations, Employee Relocation and Transfer Companies</u>

First Jacksonville Mortgage Company
Plunkett-Boerner-Robertson, Inc.
The First Pyramid Life Insurance Company of America
Delta Life and Annuity
Fairfield Communities, Inc.
Reliance Trust Company (Atlanta, GA)
Department of the Army - Corps of Engineers
Robert C. East Company, Inc.
Purifoy Mortgage Company
Flake and Company Relators
OTASCO
GenRel Relocation
Signa Relo
Tremco, Inc.
Corporate Transfer
Merrill-Lynch Relo
The Lofland Steel Company
Equitable Relo
Bailey Corporation
McCaskill Real Estate
U.S.F.& G.
Missouri Improvement Company
Hathaway-Moore & Associates
Troy & Nichols Manufacturing Company
FNMA
Southwestern Bell
Relocation Funding Corporation of America


VII.  EMPLOYMENT HISTORY

November 1970 - Began as Management Trainee with Savers Federal Savings
    and Loan Association (formerly Pulaski Federal Savings and Loan)
March 1971 - Assumed duties as Staff Appraiser for the Association
July 1975 - Elected to Assistant Vice President - Senior Staff Appraiser
February 1978 - Elected to Vice President, Senior Staff Appraiser
April 1982 - Staff Appraiser, Richard A. Stephens and Associates
November 1982 - Vice President, First Pyramid Mortgage Company, Inc.
April 1984 - Elected to President, First Pyramid Mortgage Company
                        and
            Vice President - Real Estate and Mortgage Lending
            The First Pyramid Life Insurance Company of America
January 1985 - Independent Appraiser/Counselor -
                Michael T. Pyron, M.A.I., S.R.A.


**286**

IV. OFFICERS AND COMMITTEES

Arkansas Chapter 46 - American Institute of Real Estate Appraisers
 Chairman Candidates Guidance Committee (1976)
 Chariman Candidates Day Committee for the South Central Regional
  Conference (1979)
 Secretary-Treasurer (1982) (1983) (1984)
 Standards of Professional Practice - Review and Counseling Committee
  (1982)
 President (1985)
Arkansas Chapter 108 - Society of Real Estate Appraisers
 Program Committee Chairman (1974)
 Seminar Chairman (1975)
 Member - Board of Directors (1976)
 Secretary-Treasurer (1977) (1978) (1979)
 Vice President (1979-1980)
 President (1980-1981)
 Chairman - Board of Directors (1981-1982)
 Member - Board of Directors (1985)
 Member - Board of Directors (1985)

V. PROFESSIONAL TEACHING EXPERIENCE

Seminar Co-Instructor - SREA Sponsored Seminar
 FHLMC Form 90 - FNMA Form 1004 - December, 1978

Course Instructor - Residential Appraising,
 Institute of Financial Education - 12 week course - Fall 1980

Faculty Member - Real Estate Appraisal Specialty
 Hadfield Real Estate Exam Review Course
 Monthly Instruction - Spring 1980 to 1982

VI. PARTIAL LIST OF CLIENTS

Banks

First Commercial Bank
Union National Bank
Worthen Bank & Trust Company
Metropolitan National Bank
Pulaski Bank & Trust Company
Twin City Bank
First American National Bank
Arkansas Bank and Trust Company
The Citizens Bank of Booneville
First National Bank of Harrison
First State Bank of Dermott

04/05/2008  ...  RED APPLE PROPERTIES     FAX NO. 5013626048        P. 02

# Owner Property Disclosure

Page 1 of 6

**RED APPLE PROPERTIES**
256 Eden Park Lane
Heber Springs, AR 72543
Phone: 501-362-5025   Fax: 501-362-5048



Copyright
**2002**
Arkansas
REALTORS®
Association

Form Serial Number: 5GAOM-2CQWHY-01F01

## TO BE COMPLETED BY OWNER:   (Please Print)          Date: 6.5.02

Property Address: _ALL LOTS IN DIAMOND BLUFF ESTATES_

Approximate square footage (if applicable): _____ Owner ☐ is ☑ is not occupying the Property.
If owner is occupying the Property, give length of time of occupancy (years): _____

Owner(s): _CHARLES COPPS_

The following utilities are connected to and services supplied to the Property:

☐ Water, and is provided by
  ☑ A rural water district or other non-municipal water system: _____
  ☐ A municipality or county: _____
  ☐ Well
  ☐ Other: _____

☐ Natural gas, and is provided by: _NONE_

☐ Electricity, and is provided by: _1ST ELECTRIC COOP CORP._

☐ Sewer, and is provided by
  ☑ A non-municipal sewer system: _____
  ☐ A municipality or county: _____
  ☑ Individual septic system
  ☐ Other: _____

☐ Cable television, and is provided by: _____

☐ Telephone, and is provided by: _SWB·_

☐ Garbage pickup, and is provided by _LAKE CITY SANITATION_

☐ Termite policy (current), and is provided by (Name of Company): _____

☐ Homestead Tax Exemption has been claimed for the tax year
APPROXIMATE DATE OF CONSTRUCTION:

**Purpose Of Statement:** This is a statement of conditions and information concerning the Property. Unless otherwise advised, the Owner does not possess any expertise in construction, architecture, engineering or any other specific areas related to the construction or condition of improvements on the Property or the Property itself, other than occupying or having ownership of the Property. The Owner possesses no greater knowledge than that which could be obtained by inspection of the Property by potential buyers, lessees, tenants or their representatives. This statement is not a warranty of any kind by the Owner, Listing Agent Firm or any subagent of Listing Agent Firm. **THIS DISCLOSURE IS NOT A SUBSTITUTE FOR INSPECTIONS. ANY POTENTIAL PURCHASER OF THE PROPERTY IS ENCOURAGED TO OBTAIN A PROFESSIONAL, PERSONAL OR OTHER INSPECTION PRIOR TO PURCHASING, LEASING, EXCHANGING, RENTING OR OFFERING TO PURCHASE THE PROPERTY.**

**Instructions to Owner:** (1) Complete this form yourself.  (2) Report known conditions affecting the property.  (3) Attach additional pages with your signature if additional space is required.  (4) Answer ALL questions.  (5) If some items do not apply to Property check "Not Applicable".  (6) If you do not know the answer to a question or do not understand a question, check the answer "Unknown".

**Owner's Statement:** Even though this is not a warranty, the Owner hereby specifically makes the following representations based on the Owner's knowledge as of the above date. Owner agrees to notify Listing Agent Firm if any answer set forth below becomes untrue. Unless a potential purchaser desires not to obtain a copy of this statement (as expressly set forth in a Real Estate Contract), the Owner authorizes Listing Agent Firm to provide a copy of this statement to any person or entity in connection with any possible, actual or anticipated sale, exchange, lease or rental of the Property.

*(Continued on Page 2 of 6)*

Ex 7

FAX NO. 5013625048     P. 03

# Owner Property Disclosure

**RED APPLE PROPERTIES**
256 Eden Park Lane
Heber Springs, AR 72543
Phone: 501-362-5025   Fax: 501-362-5048



Copyright
**2002**
Arkansas
REALTOR®
Association

Page 2 of 6

Form Serial Number: 6QAOM-2CQWHY-61F01

### THE FOLLOWING STATEMENTS ARE MADE BY OWNER AND ARE NOT REPRESENTATIONS OF ANY AGENT(S) AND/OR SUBAGENT(S) OF THE OWNER.

To the best of my knowledge, concerning the Property referenced above:

| # | Statement | Yes | No | Unknown | Not Applicable |
|---|-----------|-----|-----|---------|----------------|
| 1. | Are there any features of the Property shared in common with adjoining landowners, such as walls, fences, driveways, septic systems, water wells, satellite dishes, or shared meters or shared utilities? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |
| 2. | Have there been any problems with any private sewer or water system, septic system, water well, or other system or utility servicing the property? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |
| 3. | Are there any encroachments, easements, leases, liens, mortages or deeds of trust, contracts for sale or installment land sales contracts, adverse possession claims or similar matters that affect the Property that a title search would not reveal? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |
| 4. | Are there room additions, structural modifications or other alterations or repairs made to the Property since the Property was originally constructed? | ☐ Yes | ☑ No | ☐ Unknown | ☑ Not Applicable |
| 5. | If the answer to Question 4 was "Yes", were such structural changes done following issuance of a Permit and in compliance with building codes? | ☐ Yes | ☐ No | ☐ Unknown | ☑ Not Applicable |
| 6. | Are there landfills, hazardous wastes, asbestos, radon gas, mold, urea, formaldehyde, electromagnetic fields, or other substances that may affect the Property or the occupants of the Property, or are there any notifications of environmental problems about the Property from the EPA, governmental agencies, or some other source? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |
| 7. | Are there any underground storage tanks of any kind located on the Property? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |
| 8. | Has there been any settling from any cause, or slippage, sliding or other poor soil conditions at the Property or to adjacent properties? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |
| 9. | Has there been any flooding, drainage, grading problems, or has water ever stood on the Property or under any improvement constructed thereon? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |
| 10. | Has there been any damage to the Property or any of the structures from fire, earthquake, storms, floods or landslides prior to or during your ownership? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |
| 11. | Are there any Bills of Assurance, deed restrictions, other obligations, or other use restrictions for the Property that a title search would not reveal? | ☐ Yes | ☒ No | ☐ Unknown | ☐ Not Applicable |
| 12. | Is there a Homeowners Association, historical preservation district, or architectural committee or board which has any authority over the Property? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |
| 13. | Are there any violations or nonconforming uses of the Property regarding zoning, land use restrictions or "setback" requirements or matters disclosed in Questions 11 and 12? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |
| 14. | Are there any common areas such as pools, tennis courts, driveways, roads or walkways co-owned with or used by others? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |
| 15. | Are there any notices of abatement or citations against the Property? | ☐ Yes | ☑ No | ☐ Unknown | ☐ Not Applicable |

(Continued on Page 3 of 6)

04/05/2006  10:56   5018256044        TREE UPTIONTS REALT          FAX NO. 5013625048                P. 04

# Owner Property Disclosure

**RED APPLE PROPERTIES**
256 Eden Park Lane
Heber Springs, AR 72543
Phone: 501-362-5025   Fax: 501-362-5048

REALTOR®   EQUAL HOUSING OPPORTUNITY

Copyright
**2002**
Arkansas
REALTOR®
Association

Page 3 of 6

Form Serial Number: 5GABM-2CQWHY-01F01

| # | Question | Yes | No | Unknown | Not Applicable |
|---|----------|-----|----|---------|----------------|
| 16. | Are there any lawsuits affecting this Property or judgments against the Owner that would affect the title or sale of the Property? | ☐ | ☒ | ☐ | ☐ |
| 17. | Are there any neighborhood noise problems or other nuisances that would not be normal for this type of Property? | ☐ | ☒ | ☐ | ☐ |
| 18. | Are there any known defects in the mechanical, electrical, plumbing, appliance, heat and air, water, sewer or septic systems of the Property? | ☐ | ☐ | ☐ | ☒ |
| 19. | Are there any known defects in the structure(s) or sub-structure(s) of any improvements located on the Property? | ☐ | ☐ | ☐ | ☒ |
| 20. | Is any of the Property in the floodplain or floodway? | ☒ | ☐ | ☐ | ☐ |
| 21. | Has any lender required you to purchase flood insurance on the Property? | ☐ | ☒ | ☐ | ☐ |
| 22. | Has there ever been a problem with the roof of any of the improvements on the Property, such as defective shingles, damaged shingles, leaking or otherwise, or have you become aware of possible problems with the roof of any of the improvements on the Property that may occur in the future? | ☐ | ☐ | ☐ | ☒ |
| 23. | Is there any infestation by termites or similar insects, or is there any known damage from a previous infestation of this type on the Property? | ☐ | ☐ | ☐ | ☒ |
| 24. | Do you have knowledge or have you ever received notice from a termite company or other person or entity concerning possible problems or potential problems with the Property? | ☐ | ☐ | ☐ | ☒ |
| 25. | Have you ever filed or made an insurance claim, warranty claim, or other claim concerning the Property? | ☐ | ☐ | ☐ | ☒ |
| 26. | Have you ever received a settlement of a claim and not made repairs to improvements on the Property? | ☐ | ☒ | ☐ | ☐ |
| 27. | Has any person or entity ever refused to complete the purchase of the Property because of an actual or alleged problem with the condition of the Property? | ☐ | ☒ | ☐ | ☐ |
| 28. | Are there any leases or rental agreements currently in effect on the Property? | ☐ | ☒ | ☐ | ☐ |
| 29. | Has any part of the Property been designated as Wetlands? | ☐ | ☒ | ☐ | ☐ |
| 30. | Are there any persons or entities, other than those listed above as "owners", who claim or have ownership or leasehold interest in the Property? | ☐ | ☒ | ☐ | ☐ |
| 31. | Are there any existing pipelines carrying oil, gas or chemicals underneath or adjacent to the Property or are there any pipeline rights-of-way or easements over or adjacent to the Property? | ☐ | ☒ | ☐ | ☐ |
| 32. | Are you aware of an unsatisfactory percolation, groundwater, or soil test concerning the Property? | ☐ | ☒ | ☐ | ☐ |
| 33. | Has any boundary discrepancy or unsatisfactory condition concerning the Property been disclosed to you, including information obtained from a boundary survey, environmental report or property inspection of the Property? | ☐ | ☒ | ☐ | ☐ |

(Continued on Page 4 of 6)

PLTF 55

ADDITIONAL TITLE PROPERTIES          FAX NU. 5013625048          P. 05

# Owner Property Disclosure

Page 4 of 6

**RED APPLE PROPERTIES**
256 Eden Park Lane
Heber Springs, AR 72543
Phone: 501-362-5025    Fax: 501-362-5048

REALTOR®   EQUAL HOUSING OPPORTUNITY

Copyright
**2002**
Arkansas
REALTORS®
Association

Form Serial Number: 5GADM-2CQWHY-01F01

| # | | Yes | No | Unknown | Not Applicable |
|---|---|---|---|---|---|
| 34. | Are you aware of any facts, circumstances or events on or around the Property which, if known to a potential buyer, could adversely affect in a material manner the value or desirability of the Property? | ☐ | ☑ | ☐ | ☐ |
| 35. | Have any of the improvements on the Property been constructed at another site then moved onto the Property? | ☐ | ☐ | ☐ | ☑ |
| 36. | Does the Property contain any exterior insulation finish system (EIFS) or synthetic stucco or similar components? | ☐ | ☐ | ☐ | ☑ |
| 37. | Have you received written notice of any registered sexual offender in the neighborhood of the Property? | ☐ | ☑ | ☐ | ☐ |
| 38. | Are you aware of any surface or sub-surface mining or extraction for coal, gravel, rock, oil, gas, or other minerals on the Property or on adjacent properties? | ☐ | ☑ | ☐ | ☐ |
| 39. | Are you aware of any person or entity claiming or possibly having the right to claim: (i) the right to extract any minerals, oil, natural gas, coal or other minerals from the surface or sub-surface of the Property; or (ii) ownership of any sub-surface or mineral rights to the Property? | ☐ | ☑ | ☐ | ☐ |
| 40. | Is the Property specially constructed or modified to permit access and use by a person with a physical disability? | ☐ | ☐ | ☐ | ☑ |
| 41. | Does Owner or any person owning an interest in the Property (if Owner is a corporation or other entity) hold a real estate license? | ☐ | ☑ | ☐ | ☐ |
| 42. | Are there any other defects in the Property known to you? | ☐ | ☑ | ☐ | ☐ |

43.  What school district do you believe the Property is in:
   Elementary: _Quitman_
   Middle/Junior High: _BUITMAN_
   Senior High: _QUITMAN_

---

If the answer to any of these is yes, explain. Attach additional sheets if necessary.

#.20  SOME LAKEFRONT LOTS HAVE OWNERSHIP LINES BELOW
THE RED (ELEVATION) LINE, BUT HOMES CANNOT BE
BUILT BELOW THE RED LINE

(Continued on Page 5 of 6)

PLTF 56

052

04/05/2008, 18:36  5018256044       THREE CHIMNEYS REALT       PAGE  08
                                     FAX NO. 5013825048          P. 08

# Owner Property Disclosure

Page 5 of 6

**RED APPLE PROPERTIES**
256 Eden Park Lane
Heber Springs, AR 72543
Phone: 501-362-5025   Fax: 501-362-5048

Copyright
**2002**
Arkansas
REALTORS®
Association

Form Serial Number: 5GADM-2CQWHY-01F01

## LEAD WARNING STATEMENT

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

| 43. | Are you aware of lead-based paint or lead-based paint hazards in or about the Property? | ☐ Yes | ☐ No | ☐ Unknown | ☐ Not Applicable |
|-----|-----|-----|-----|-----|-----|
| 44. | Do you have any available records or reports pertaining to lead-based paint or lead-based paint hazards in or about the Property? | ☐ Yes | ☐ No | ☐ Unknown | ☐ Not Applicable |

If the answer to either of these is yes, explain. Attach additional sheets if necessary.

(Continued on Page 6 of 6)

04/09/2008 20:50 501062000046 THREE CHAIN RIFLE PROPERTIES    FAX NO. 5013625048    P. 07

## Owner Property Disclosure

Page 6 of 6

**RED APPLE PROPERTIES**
266 Eden Park Lane
Heber Springs, AR 72543
Phone: 501-362-5025    Fax: 501-362-5048



Copyright
**2002**
Arkansas
REALTORS®
Association

THIS FORM IS PRODUCED AND COPYRIGHTED BY THE ARKANSAS REALTORS ASSOCIATION. THE SERIAL NUMBER BELOW IS A UNIQUE NUMBER NOT USED ON ANY OTHER FORM. THE SERIAL NUMBER BELOW SHOULD BE AN ORIGINAL PRINTING, NOT MACHINE COPIED, OTHERWISE THE FORM MAY HAVE BEEN ALTERED. DO NOT SIGN THIS FORM IF IT IS BEING EXECUTED PAST DECEMBER 31, 2002.

### FORM SERIAL NUMBER: 5GADM-2CQWHY-01F01

OWNER HEREBY AUTHORIZES (UNLESS A POTENTIAL PURCHASER DESIRES NOT TO OBTAIN A COPY OF THE STATEMENT AS EXPRESSLY SET FORTH IN A REAL ESTATE CONTRACT) ALL AGENTS INVOLVED IN THE SALE, EXCHANGE, LEASE OR RENTAL OF THE PROPERTY TO DISTRIBUTE THIS FORM TO PROSPECTIVE BUYERS, LESSEES OR TENANTS OF THE PROPERTY. THIS OWNER PROPERTY DISCLOSURE IS INCORPORATED INTO THE LISTING AGREEMENT EXECUTED BY OWNER AND LISTING AGENT FIRM. OWNER FURTHER CERTIFIES THAT THE INFORMATION HEREIN IS TRUE AND CORRECT TO THE BEST OF OWNER'S KNOWLEDGE AS OF THE ABOVE DATE. OWNER FURTHER AGREES TO NOTIFY IN WRITING BUYERS, LESSEES, TENANTS OR LISTING AGENT FIRM OF ANY CHANGES IN THIS DISCLOSURE WHICH MAY BECOME KNOWN TO OWNER AFTER THIS DATE.

Submitted by:

_____    _____
Owner                        Owner

(Month) _____ (Day) _____ (Year) _____ at _____ (am)(pm)

WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS OWNER PROPERTY DISCLOSURE. WE UNDERSTAND THAT THE ABOVE STATEMENTS ABOUT THE PROPERTY ARE TRUE AND CORRECT TO THE BEST OF THE OWNER'S KNOWLEDGE AS OF THE ABOVE DATE. IT IS NOT A WARRANTY OF ANY KIND BY OWNER OR OWNER'S AGENT AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS BUYER, LESSEE OR TENANT MAY WISH TO OBTAIN.

**BUYER'S LEAD-BASED PAINT DISCLOSURE ACKNOWLEDGEMENT:**

| | | | | | |
|---|---|---|---|---|---|
| 1. | Buyer has received copies of all records and reports pertaining to lead-based paint or lead-based paint hazards in or about the Property available to the Sellers. | ☐ Yes | ☐ No | ☐ Unknown | ☐ Not Applicable |
| 2. | Buyer has received a copy of the pamphlet, "Protect Your Family From Lead In Your Home". | ☐ Yes | ☐ No | ☐ Unknown | ☐ Not Applicable |

Received by:

_____    _____
Buyer                        Buyer

(Month) _____ (Day) _____ (Year) _____ at _____ (am)(pm)

# Seller Property Disclosure

Page 1 of 6

**REALTOR®**

**2006 Arkansas REALTORS Association**

Form Serial Number: 05SADM-5T1214-150C01

**TO BE COMPLETED BY SELLER:   (Please Print)**     Date: *4.7.06*

Seller(s): *CHARLES CAPPS*

Seller ☐ is ☒ is not  occupying the Property.
If Seller is occupying or has occupied the Property, give length of occupancy in years: _____

Property Address: *LOT 133 PLAT 9 DIAMOND BLUFF ESTATE*
Approximate finished, heated & cooled square footage (if applicable): *NA*
Approximate Date of Construction: *NA*

Please check the following boxes as they apply to the Property:
☐ Water, and is provided by
  ☒ A rural water district or other non-municipal water system: _____
  ☐ A municipality or county: _____
  ☐ Well _____
  ☐ Other: _____
☐ Natural gas, and is provided by: _____
☐ Propane tank: ☐ Owned ☐ Rented from: _____
☒ Electricity, and is provided by: *1ST ELECTRIC COOP CORP*
☐ Sewer, and is provided by
  ☒ A non-municipal sewer system: _____
  ☐ A municipality or county: _____
  ☐ Septic system (See questions #2 & 3, following page). Type, if known: _____
  ☐ Other: _____
☒ Mandatory Property Owner's Association Dues: Amount $ *72.00*     Frequency: *ANNUALLY*
☐ Special Property Assessment: Amount $ _____     Frequency: _____
☐ Cable/satellite television, and is provided by: _____
☒ Telephone, and is provided by: *SWB - GREERS FERRY EXCHANGE*
☐ Garbage pickup, and is provided by: _____
☒ Fire protection, and is provided by: *COVE CREEK VOLENTEER FIRE DEPT.*
☐ Termite policy (current), and is provided by (Name of Company): _____
☐ Homestead Tax Credit has been claimed for the tax year of _____
☐ A Tax Benefit (tax assessment frozen) for over 65 or handicapped status has been claimed by Seller.

**Purpose Of Statement:** This is a statement of conditions and information concerning the Property. Unless otherwise advised, Seller does not possess any expertise in construction, architecture, engineering or any other specific areas related to the construction or condition of improvements on the Property or the Property itself, other than occupying or having ownership of the Property. Seller possesses no greater knowledge than that which could be obtained by inspection of the Property by potential buyers, lessees, tenants or their representatives. This statement is not a warranty of any kind by Seller, Listing Firm or any subagent of Listing Firm. THIS DISCLOSURE IS NOT A SUBSTITUTE FOR INSPECTIONS.  ANY POTENTIAL PURCHASER OF THE PROPERTY IS ENCOURAGED TO OBTAIN A PROFESSIONAL, PERSONAL OR OTHER INSPECTION PRIOR TO PURCHASING, LEASING, EXCHANGING, RENTING OR OFFERING TO PURCHASE THE PROPERTY.

**Instructions to Seller:** (1) Complete this form yourself. (2) Report known conditions affecting the Property. (3) Attach additional pages with your signature if additional space is required. (4) Answer ALL questions. (5) If some items do not apply to Property check "Not Applicable". (6) If you do not know the answer to a question or do not understand a question, check the answer "Unknown".

**Seller's Statement:** Even though this is not a warranty, Seller hereby specifically makes the following representations based on Seller's knowledge as of the above date. Seller agrees to immediately notify Listing Firm in writing and to modify this Seller Property Disclosure if any answer set forth below becomes untrue. Unless a potential purchaser desires not to obtain a copy of this statement (as expressly set forth in a Real Estate Contract), Seller authorizes Listing Firm to provide a copy of this statement to any person or entity in connection with any possible, actual or anticipated sale, exchange, lease or rental of the Property.

(Page 1 of 6)

Form #ARA39, Rev. 05112)

*Ex. 8*

PLTF 59

071

# Seller Property Disclosure

Page 2 of 6

[REALTOR] [EQUAL HOUSING OPPORTUNITY] **2006** Arkansas REALTORS® Association

Form Serial Number: 05SADM-5T1214-150C01

## THE FOLLOWING STATEMENTS ARE MADE BY SELLER AND ARE NOT REPRESENTATIONS OF ANY AGENT(S) AND/OR SUBAGENT(S) OF SELLER.

To the best of my knowledge, concerning the Property referenced above:

| # | Question | Yes | No | Unknown | Not Applicable |
|---|---|---|---|---|---|
| 1. | Are there any features of the Property shared in common with adjoining landowners, such as walls, fences, driveways, septic systems, water wells, satellite dishes, or shared meters or shared utilities? | | ☒ No | | Not Applicable |
| 2. | Is there now or has there ever been a waste disposal maintenance and monitoring contract with maintenance personnel certified by the Arkansas Department of Health? | ☒ Yes | | | Not Applicable |
| 3. | Have there been any problems with any private sewer or water system, septic system, water well, or other system or utility servicing the Property? | | ☒ No | | Not Applicable |
| 4. | Are there any encroachments, easements, leases, liens, mortgages or deeds of trust, contracts for sale or installment land sales contracts, adverse possession claims or similar matters that affect the Property that a title search would not reveal? | | ☒ No | | Not Applicable |
| 5. | Are there room additions, structural modifications or other alterations or repairs made to the Property since the Property was originally constructed? | | | | ☒ Not Applicable |
| 6. | If the answer to Question 5 was "Yes", were such structural changes done following issuance of a Permit and in compliance with building codes? | | | | ☒ Not Applicable |
| 7. | Are there any underground storage tanks of any kind located on the Property? | | ☒ No | | Not Applicable |
| 8. | Has there been any settling from any cause, or slippage, sliding or other poor soil conditions at the Property or to adjacent properties? | | ☒ No | | Not Applicable |
| 9. | Has there been any flooding, drainage, grading problems, or has water ever stood on the Property or under any improvement constructed thereon? | | ☒ No | | Not Applicable |
| 10. | Has there been any damage to the Property or any of the structures from fire, earthquake, storms, floods or landslides prior to or during your ownership? | | ☒ No | | Not Applicable |
| 11. | Are there any Bills of Assurance, deed restrictions, other obligations, or other use restrictions for the Property that a title search would not reveal? | | ☒ No | | Not Applicable |
| 12. | Is there a Homeowners Association, historical preservation district, or architectural committee or board which has any authority over the Property? | | ☒ No | | Not Applicable |
| 13. | Are there any violations or nonconforming uses of the Property regarding zoning, land use restrictions or "setback" requirements or matters not disclosed in Questions 11 and 12? | | ☒ No | | Not Applicable |
| 14. | Are there any common areas such as pools, tennis courts, driveways, roads or walkways co-owned with or used by others? | | ☒ No | | Not Applicable |
| 15. | Are there any notices of abatement or citations against the Property? | | ☒ No | | Not Applicable |

(Page 2 of 6)

Form SARA2B, Rev. 051121

PLTF 60

072

# Seller Property Disclosure

**Page 3 of 6**

Form Serial Number: 05SADM-5T1214-150C01

2006
Arkansas
REALTORS®
Association

| # | Question | Yes | No | Unknown | Not Applicable |
|---|----------|-----|-----|---------|----------------|
| 16. | Are there any lawsuits affecting this Property or judgments against Seller that would affect the title or sale of the Property? | ☐ | ☒ | ☐ | ☐ |
| 17. | Are there any neighborhood noise problems or other nuisances that would not be normal for this type of Property? | ☐ | ☒ | ☐ | ☐ |
| 18. | Are there any known defects in the mechanical, electrical, plumbing, appliance, heat and air, water, sewer or septic systems of the Property? | ☐ | ☐ | ☐ | ☒ |
| 19. | Are there any known defects in the structure(s) or sub-structure(s) of any improvements located on the Property? | ☐ | ☐ | ☐ | ☒ |
| 20. | Is any of the Property in the floodplain or floodway? | ☒ | ☐ | ☐ | ☐ |
| 21. | Has any lender required you to purchase flood insurance on the Property? | ☐ | ☒ | ☐ | ☐ |
| 22. | Has there ever been a problem with the roof of any of the improvements on the Property, such as defective shingles, damaged shingles, leaking or otherwise, or have you become aware of possible problems with the roof of any of the improvements on the Property that may occur in the future? | ☐ | ☐ | ☐ | ☒ |
| 23. | Is there any infestation by termites or similar insects, or is there any known damage from a previous infestation of this type on the Property? | ☐ | ☐ | ☐ | ☒ |
| 24. | Do you have knowledge or have you ever received notice from a termite company or other person or entity concerning possible problems or potential problems with the Property? | ☐ | ☐ | ☐ | ☒ |
| 25. | Have you ever filed or made an insurance claim, warranty claim, or other claim concerning the Property? *Seller is aware that insurance claims against this Property may affect the availability/affordability of a buyer's ability to obtain homeowners insurance and thus obtaining of a mortgage.* | ☐ | ☐ | ☐ | ☒ |
| 26. | Have you ever received a settlement of a claim and not made repairs to Improvements on the Property? | ☐ | ☐ | ☐ | ☒ |
| 27. | Has any person or entity ever refused to complete the purchase of the Property because of an actual or alleged problem with the condition of the Property? | ☐ | ☒ | ☐ | ☐ |
| 28. | Are there any leases or rental agreements currently in effect on the Property? | ☐ | ☒ | ☐ | ☐ |
| 29. | Has any part of the Property been designated as Wetlands? | ☐ | ☒ | ☐ | ☐ |
| 30. | Are there any persons or entities, other than those listed above as "sellers", who claim or have ownership or leasehold interest in the Property? | ☐ | ☒ | ☐ | ☐ |
| 31. | Are there any existing pipelines carrying oil, gas or chemicals underneath or adjacent to the Property or are there any pipeline rights-of-way or easements over or adjacent to the Property? | ☐ | ☒ | ☐ | ☐ |
| 32. | Are you aware of an unsatisfactory percolation, groundwater, or soil test concerning the Property? | ☐ | ☒ | ☐ | ☐ |

(Page 3 of 6)

Form ARA35, Rev. 051121

PLTF 61

073

# Seller Property Disclosure

Page 4 of 6

**R** REALTOR®  Copyright 2006 Arkansas REALTORS® Association

Form Serial Number: 05SADM-5T1214-150CD1

| # | Question | Yes | No | Unknown | Not Applicable |
|---|----------|-----|-----|---------|----------------|
| 33. | Has any boundary discrepancy or unsatisfactory condition concerning the Property been disclosed to you, including information obtained from a boundary survey, environmental report or Property inspection of the Property? | ☐ Yes | ☒ No | ☐ Unknown | ☐ Not Applicable |
| 34. | Are you aware of any facts, circumstances or events on or around the Property which, if known to a potential buyer, could adversely affect in a material manner the value or desirability of the Property? | ☐ Yes | ☒ No | ☐ Unknown | ☐ Not Applicable |
| 35. | Have any of the improvements on the Property been constructed at another site then moved onto the Property? | ☐ Yes | ☐ No | ☐ Unknown | ☒ Not Applicable |
| 36. | Does the Property contain any exterior insulation finish system (EIFS) or synthetic stucco or similar components? | ☐ Yes | ☐ No | ☐ Unknown | ☒ Not Applicable |
| 37. | Are you aware of any surface or sub-surface mining or extraction for coal, gravel, rock, oil, gas, or other minerals on the Property or on adjacent properties? | ☐ Yes | ☐ No | ☐ Unknown | ☒ Not Applicable |
| 38. | Are you aware of any person or entity claiming or possibly having the right to claim: (i) the right to extract any minerals, oil, natural gas, coal or other minerals from the surface or sub-surface of the Property; or (ii) ownership of any sub-surface or mineral rights to the Property? | ☐ Yes | ☒ No | ☐ Unknown | ☐ Not Applicable |
| 39. | Is the Property specially constructed or modified to permit access and use by a person with a physical disability? | ☐ Yes | ☐ No | ☐ Unknown | ☒ Not Applicable |
| 40. | Does Seller or any person owning an interest in the Property (if Seller is a corporation or other entity) hold a real estate license? | ☐ Yes | ☒ No | ☐ Unknown | ☐ Not Applicable |
| 41. | Are there any other defects in the Property known to you? | ☐ Yes | ☒ No | ☐ Unknown | ☐ Not Applicable |
| 42. | Are there landfills, hazardous waste, asbestos, radon gas, urea-formaldehyde, electromagnetic fields, or other substances that may affect the Property or the occupants of the Property? | ☐ Yes | ☒ No | ☐ Unknown | ☐ Not Applicable |
| 43. | Is Seller aware of any unlawful chemical or drug substances or their manufacture within the Property? | ☐ Yes | ☒ No | ☐ Unknown | ☐ Not Applicable |
| 44. | Are there any notifications of environmental conditions about the Property from the EPA, governmental agencies, or some other source? | ☐ Yes | ☒ No | ☐ Unknown | ☐ Not Applicable |

45. What school district do you believe the Property is in:

Elementary: _____

Middle/Junior High: _____

Senior High: _____

If the answer to any of these is yes, explain. Attach additional sheets if necessary.

#2 Private Sewer System Maintained by a licensed Inspector

Sewer fees are $72.00 Annually for a Vacant Lot

$192.00 Annually for Residence

#20 a small portion of land is below the

_____

(Page 4 of 6)

Form MARA09 Rev. 051121

PLTF 62

074

# Seller Property Disclosure

Page 5 of 6

Copyright 2006 Arkansas REALTORS® Association

Form Serial Number: 05SADM-5T1214-150C01

| 46. | Were any improvements on this Property constructed prior to 1978? | ☐ Yes | ☐ No | ☐ Unknown | ☐ Not Applicable |
|---|---|---|---|---|---|
| 47. | Are you aware of lead-based paint or lead-based paint hazards on any improvements to the Property including, without limitations, garages, tool sheds, other outbuildings, fences, signs and mechanical equipment on the Property? | ☐ Yes | ☐ No | ☐ Unknown | ☐ Not Applicable |

**NOTICE:** If either questions 46 or 47 are answered with "Yes" or "Unknown", the Lead Based Paint Disclosure must be completed and acknowledged by all parties to the real estate transaction and attached to ANY Real Estate Contracts associated with this Property.

*MOLD ENVIRONMENTAL CONDITIONS: Mold, mildew, spores and other microscopic organisms and/or allergens (collectively referred to as "mold") are environmental conditions that are common in residential properties and may affect the Property. Mold, in some forms, has been reported to be toxic and may cause serious illnesses, including, but not limited to, allergic and/or respiratory reactions or other problems, particularly in persons with immune system problems, young children and/or the elderly. Mold has also been reported to cause extensive damage to personal and real property.*

*The Selling Firm or the Listing Firm cannot suggest, refer, recommend, or infer that you should or should not use a Mold Inspector. Should you desire an inspection by a Certified Mold Inspector, you should contact an inspector who has been authorized to capture mold samples and/or air samples for laboratory testing.*

*No warranty, representation or recommendation can be made by any agent or representative of the Selling Firm or the Listing Firm concerning any Mold Inspector. The person(s) signing this Disclosure is STRONGLY URGED to independently determine the competency of any Mold Inspector to be used in connection with the purchase, sale or rental of real estate.*

| 48. | Is there or has there ever been any past or present water intrusion? | ☐ Yes | ☐ No | ☐ Unknown | ☐ Not Applicable |
|---|---|---|---|---|---|
| 49. | Is there or has there ever been any known mold presence? | ☐ Yes | ☐ No | ☐ Unknown | ☐ Not Applicable |

If the answer to any of the above four questions is yes, explain. Attach additional sheets if necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

[Page 5 of 6]

Form SARA30, Rev. 051121

PLTF 63

075

# Seller Property Disclosure

Page 8 of 8

R REALTOR®   [house logo]

Copyright 2006
Arkansas
REALTORS®
Association

If the presence of a registered sex offender is a matter of concern to Buyer, Buyer understands that Buyer must contact local law enforcement officials or access the State of Arkansas registered sexual offenders website at http://www.acic.org/Registration/index.htm regarding such information.

Buyer is strongly urged, as part of any pre-closing investigation desired by Buyer concerning the Property to: (i) conduct testing for possible existence of chemical or drug substances in, on or about the Property, as desired by Buyer, and (ii) to visit with applicable law enforcement authorities about possible prior illegal activity on or about the Property.

THIS FORM IS PRODUCED AND COPYRIGHTED BY THE ARKANSAS REALTORS® ASSOCIATION. THE SERIAL NUMBER BELOW IS A UNIQUE NUMBER NOT USED ON ANY OTHER FORM. THE SERIAL NUMBER BELOW SHOULD BE AN ORIGINAL PRINTING, NOT MACHINE COPIED, OTHERWISE THE FORM MAY HAVE BEEN ALTERED. DO NOT SIGN THIS FORM IF IT IS BEING EXECUTED PAST DECEMBER 31, 2006.

FORM SERIAL NUMBER: 059ADM-5T1214-150C01

SELLER HEREBY AUTHORIZES (UNLESS A POTENTIAL PURCHASER DESIRES NOT TO OBTAIN A COPY OF THIS STATEMENT AS EXPRESSLY SET FORTH IN A REAL ESTATE CONTRACT) ALL AGENTS INVOLVED IN THE SALE, EXCHANGE, LEASE OR RENTAL OF THE PROPERTY TO DISTRIBUTE THIS FORM TO PROSPECTIVE BUYERS, LESSEES OR TENANTS OF THE PROPERTY. THIS SELLER PROPERTY DISCLOSURE IS INCORPORATED INTO THE LISTING AGREEMENT EXECUTED BY SELLER AND LISTING FIRM. SELLER FURTHER CERTIFIES THAT THE INFORMATION HEREIN IS TRUE AND CORRECT TO THE BEST OF SELLER'S KNOWLEDGE AS OF THE ABOVE DATE. SELLER FURTHER AGREES TO NOTIFY IN WRITING BUYERS, LESSEES, TENANTS OR LISTING FIRM OF ANY CHANGES IN THIS DISCLOSURE WHICH MAY BECOME KNOWN TO SELLER AFTER THIS DATE.

COUNTERPARTS: This Seller Property Disclosure may be executed in multiple counterparts each of which shall be regarded as an original hereof but all of which together shall constitute one in the same.

Submitted by:

Signature: X Charles Boyd          Signature: _____

Printed Name: X CHARLES CARTE          Printed Name: _____
              Seller                                    Seller

(Month) April   (Day) 7   (Year) 06   at   11   (am)(pm)

WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS SELLER PROPERTY DISCLOSURE. WE UNDERSTAND THAT THE ABOVE STATEMENTS ABOUT THE PROPERTY ARE TRUE AND CORRECT TO THE BEST OF SELLER'S KNOWLEDGE AS OF THE ABOVE DATE. IT IS NOT A WARRANTY OF ANY KIND BY SELLER OR SELLER'S AGENT AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS BUYER, LESSEE OR TENANT MAY WISH TO OBTAIN.

**BUYER'S LEAD-BASED PAINT DISCLOSURE ACKNOWLEDGEMENT:**

| | | Yes | No | Unknown | Not Applicable |
|---|---|---|---|---|---|
| 1. | Buyer has received copies of all records and reports pertaining to lead-based paint or lead-based paint hazards in or about the Property available to Seller. | ☐ Yes | ☐ No | ☐ Unknown | ☐ Not Applicable |
| 2. | Buyer has received a copy of the pamphlet, "Protect Your Family From Lead In Your Home." | ☐ Yes | ☐ No | ☐ Unknown | ☐ Not Applicable |

Received by:

Signature: [signature]          Signature: Deborah Stanley

Printed Name: Douglas Stanley          Printed Name: Deborah A. Stanley
              Buyer                                    Buyer

(Month) Apr. 8   (Day) 7   (Year) 2006   at   1:45   (am)(pm)

(Page 8 of 8)

PLTF 64

076

077

Exhibit 13

# Real Estate Contract
## (Lots and Acreage)

Page 1 of 9

**THREE CHIMNEYS REALTY**
7648 Edgemont Road
Higden, Arkansas 72067
Ph (501) 825-7500 Fax (501) 825-6844
Email: info@3chimre.com



Copyright
**2006**
Arkansas
**REALTORS®**
Association

Form Serial Number: **OF8ADM-5ST48L-191401**

**1. PARTIES:** Deborah A.  and Douglas A. Stanley _____ (individually, or collectively, the "Buyer") offers to purchase, subject to the terms and conditions set forth herein, from the undersigned (individually or collectively, the "Seller") the real property described in Paragraph 2 of this Real Estate Contract (the "Property").

**2. LEGAL DESCRIPTION AND ADDRESS:** Buyer is not relying on Seller, Listing Firm or Selling Firm regarding location of the Property, Buyer having sole responsibility to engage surveyors, engineers, attorneys or other professionals to determine the location, size, slope and boundaries of the Property. If Buyer is dissatisfied with the results of such determination, Buyer, without further obligation, may declare this Real Estate Contract null and void and receive a return of Earnest Money (defined below).

LOT 153 PLAT 9 DIAMOND BLUFF ESTATES CONTAINING 1.78 ACRES MORE OR LESS
_____
_____
_____
_____
_____
_____

**3. PURCHASE PRICE:** Subject to the following conditions Buyer shall pay the following to Seller for the Property (the "Purchase Price"): *(select **one** of the following four options)*

☒ total purchase price, ........................................................................ $220,000.00
   or;

☐ price per acre, ................................................................................ $_____
   or;

☐ price per square foot, ...................................................................... $_____
   or;

☐ price per front foot ......................................................................... $_____

with Buyer paying the sum of ............................................................... $_____
in cash at closing as down payment, with the balance of the Purchase Price (the "Balance") to be paid pursuant to the following:

☐ **(i) NEW LOAN:** Subject to the Property appraising for not less than the Purchase Price and Buyer's ability to obtain a loan to be secured by the Property in the amount of .................. $_____

   **FINANCING AS FOLLOWS:**

_____
_____
_____

☒ **(ii) CASH:** ................................................................................ $220,000.00

Buyer and Seller will each independently verify quantities as set forth above and agree neither are relying upon a representation from Selling Firm or Listing Firm concerning quantities of land or front feet.

(Page 1 of 9)



# Real Estate Contract
## (Lots and Acreage)

**Page 2 of 9**

**THREE CHIMNEYS REALTY**
7648 Edgemont Road
Higden, Arkansas 72067
Ph (501) 825-7500 Fax (501) 825-6844
Email: info@3chimre.com



REALTOR®   EQUAL HOUSING OPPORTUNITY

Copyright
**2006**
Arkansas
REALTORS®
Association

Form Serial Number: OF8ADM-5ST48L-191401

**4. LOAN AND CLOSING COSTS:** Unless otherwise specified, all Buyer's closing costs, including origination fee, assumption fees, loan costs, prepaid items and loan discount points, are to be paid by Buyer.  Seller to pay Seller's closing costs.

Agreed _____

_____

_____

_____

_____

_____

**5. APPLICATION FOR FINANCING:** If applicable, Buyer agrees to make a complete application for new loan or for loan assumption within five (5) business days from the acceptance date of this Real Estate Contract.  In order to make a complete application as required by this Paragraph 5, Buyer agrees to provide lender with any requested information and pay for any credit report(s) and appraisal(s) required to make the loan.  Unless otherwise specified, if said loan is not closed or assumed, Buyer agrees to pay for loan costs incurred, including appraisal and credit reports, unless failure to close is solely the result of a breach of this Real Estate Contract by Seller, in which case such expenses will be paid by Seller.  Buyer understands that failure to make a complete loan application as defined above may constitute a breach of this Real Estate Contract.

**6. EARNEST MONEY:** Earnest money is in the amount of $<u>3,000.00</u> ("Earnest Money") which shall apply toward Buyer's Purchase Price or Closing Costs.  (If at least one or more of the conditions of Paragraphs 3, 5, 8, 9, 10, 15B, 17C, 18, 20, and 22 have not been fulfilled, performed or removed, Earnest Money shall be promptly refunded to Buyer.  If Buyer fails to fulfill his obligations under this Real Estate Contract, or if after all conditions have been met Buyer fails to close this transaction, Earnest Money may, at the sole and exclusive option of Seller, be retained by Seller as liquidated damages.  Alternatively, Seller may return Earnest Money and assert all legal or equitable rights that may exist as a result of Buyer breaching this Real Estate Contract.  Buyer warrants, represents and acknowledges that the check tendered will be honored upon presentation to Buyer's bank, and that Buyer shall be in default of this Real Estate Contract if the check is not honored upon first presentation to Buyer's bank.  Buyer and Seller agree that in the event of any dispute concerning entitlement to Earnest Money, Listing Firm may interplead Earnest Money into a court of competent jurisdiction, and upon such interpleading of Earnest Money, both Listing Firm and Selling Firm shall be released from liability to Buyer and Seller.  Listing Firm shall be reimbursed any attorney's fees or costs from the funds entered for interpleading.)

☒ **A.** Buyer tenders  ☐ cash  ☒ a check   made payable to and to be deposited by Listing Firm no later than three (3) days following the date this Real Estate Contract has been signed by Buyer and Seller.

☐ **B.** Buyer will tender  ☐ cash  ☐ a check   made payable to and to be deposited by Listing Firm within three (3) days following the date this Real Estate Contract has been signed by Buyer and Seller.  (If Earnest Money is not to be tendered within three (3) days after this Real Estate Contract has been signed by Buyer and Seller, see Paragraph 18 for further explanation.)

☐ **C.** No Earnest Money will be tendered.  References to Earnest Money in this Real Estate Contract shall not be applicable and are deemed deleted.

**7. CONVEYANCE:** Unless otherwise specified, conveyance of the Property shall be made to Buyer by general warranty deed, in fee simple absolute, except it shall be subject to recorded instruments and easements, if any, which do not materially affect the value of the Property.   Unless expressly reserved herein, **SUCH CONVEYANCE SHALL INCLUDE ALL MINERAL RIGHTS OWNED BY SELLER CONCERNING AND LOCATED ON THE PROPERTY, IF ANY, UNLESS OTHERWISE SPECIFIED IN PARAGRAPH 18.**  Seller warrants and represents only the signatures set forth below are required to transfer legal title to the Property.  Seller warrants and represents that Seller has peaceable possession of the Property, including all improvements and fixtures thereon, and the legal authority and capacity to convey the Property by a good and sufficient general warranty deed, free from any liens, leaseholds or other interests.

Form #ARA43, Rev. 051214

PLTF 41

**057**

**Real Estate Contract (Lots and Acreage)**

Page 3 of 9

THREE CHIMNEYS REALTY
7648 Edgemont Road
Higden, Arkansas 72067
Ph (501) 825-7500 Fax (501) 825-6844
Email: info@3chimre.com



Copyright
**2006**
Arkansas
REALTORS®
Association

Form Serial Number: **0F8ADM-5ST48L-191401**

**8. SOIL TESTING FOR SEPTIC OR SEWAGE SYSTEM:** Buyer has been given the opportunity to obtain a soil percolation, soil morphology test or sewage system permit meeting the Health Department regulations concerning septic systems or other sewage treatment systems. Should Buyer decline to obtain any of the above, Buyer agrees to hold Seller(s) and the Listing Firm and Selling Firm involved in this Real Estate Contract harmless of any matters relative to obtaining such test, permit or the ability to construct an improvement on the described Property that may exist or be discovered (or occur) after closing.

☐ **A.** No soil percolation or soil morphology test or septic system permit shall be provided.

☐ **B.** A soil percolation or soil morphology test conducted by a Designated Representative of the Arkansas Department of Health and certified to Buyer within _____ days prior to closing. A satisfactory soil percolation or soil morphology test does not necessarily guarantee a septic system permit will be issued in the future. Test to be provided and paid for by: ☐ Buyer ☐ Seller.

☒ **C.** A septic system permit issued by the Arkansas Department of Health for a **FOUR** Bedroom Standard System certified within **30** days prior to closing. Buyer, or Buyer's Representative, to mark location of home or be present when test is conducted. Both the tests and permit will be provided and paid for by: ☐ Buyer ☒ Seller.

☐ **D.** Seller to provide buyer with a copy of the existing valid septic system permit within three (3) business days of acceptance of this Real Estate Contract after which Buyer is to have ten (10) business days to review and accept the permit. If permit issuance date is greater than six (6) months or if the permit date will expire prior to Closing Date, Seller shall have the permit revalidated by the Arkansas Department of Health.

Should Buyer not be satisfied, acting with sole discretion, with any test or permit which may be required by Paragraph 8B, 8C or 8D, Buyer shall have all rights provided by Paragraph 6 of this Real Estate Contract.

**9. SURVEY:** Buyer has been given the opportunity to obtain a new certified survey. Should Buyer decline to obtain a survey as offered in Paragraph 9A of this contract, Buyer agrees to hold Seller(s) and the Listing Firm and Selling Firm involved in this Real Estate Contract harmless of any problems relative to any survey discrepancies that may exist or be discovered (or occur) after closing.

☒ **A.** A new certified survey, in a form satisfactory to Buyer, certified to Buyer within thirty (30) days prior to Closing by a registered land surveyor, will be provided and paid for by: ☐ Buyer ☒ Seller. See *18

☐ **B.** No survey shall be provided.

☐ **C.** Other: _____

Should Buyer agree to accept the most recent survey provided by Seller, this survey is for information purposes only and Buyer will not be entitled to the legal benefits of a survey certified in Buyer's name.

**10. TITLE REQUIREMENTS:** Unless otherwise specified:

☐ **A.** Seller shall furnish, at Seller's cost, a complete abstract reflecting merchantable title to Buyer or Buyer's Attorney; or,

☒ **B.** Seller shall furnish, at Sellers cost, an owner's policy of title insurance in the amount of the Purchase Price. If a loan is secured for the purchase of the Property, Buyers agree to pay mortgagee's portion of title policy: or,

☐ **C.** Buyer and Seller to equally split the cost of a combination owner's and mortgagee's policy of title insurance ordered by Seller in the amount of the Purchase Price, including the cost of a title search, title examination, title insurance binder, final closeout of the title policy and any other related title insurance charges.

☐ **D.** Other: _____

Buyer shall have the right to review and approve a commitment to provide title insurance prior to Closing. If objections are made to Title, Seller shall have a reasonable time to cure the objections. Regardless of policy chosen, Buyer and Seller retain their right to choose their Closing Agent(s).

Form #ARA43, Rev. 051214

PLTF 42

# Real Estate Contract
## (Lots and Acreage)
Page 4 of 9

**THREE CHIMNEYS REALTY**
7648 Edgemont Road
Higden, Arkansas 72067
Ph (501) 825-7500 Fax (501) 825-6844
Email: info@3chimre.com



Copyright
**2006**
Arkansas
REALTORS®
Association

Form Serial Number: OF8ADM-5ST48L-191401

**11. PRORATIONS:** Taxes and special assessments due on or before closing shall be paid by Seller. Any deposits on rental Property are to be transferred to Buyer at closing. Insurance, general taxes, special assessments, rental payments and interest on any assumed loan shall be prorated as of closing, unless otherwise specified herein.

**12. CLOSING:** Closing is the date and time at which Seller delivers the executed and acknowledged deed. The closing date is designated to be no later than (month) May_____ (day) 22___ (year) 2006___. The closing date may be extended only by written agreement of Buyer and Seller. If the sale is not consummated by the closing date (or any written extension thereof), the parties shall have the remedies available to them in equity or at law, including the remedies provided to Seller in Paragraph 6. Should Buyer and Seller choose the services of a closing agent(s) other than Selling Firm or Listing Firm, then Buyer and Seller each jointly and severally agree to indemnify and hold Listing Firm and Selling Firm harmless for all intentional misconduct and negligent acts (including acts of omission) of the closing agent(s). The Closing Agent(s) is/are authorized to provide Seller's settlement statement to Listing Firm (in addition to Seller) and Buyer's settlement statement to Selling Firm (in addition to Buyer) prior to settlement so that Buyer, Seller, Listing Firm and Selling Firm shall have a reasonable opportunity to review prior to closing.

**13. FIXTURES AND ATTACHED EQUIPMENT:** Unless specifically excluded herein, all fixtures and attached equipment, if any, are included in the Purchase Price.

**14. POSSESSION:** Possession of the Property shall be delivered to Buyer:

☒ **A.** Upon the Closing (Seller's delivery of executed and acknowledged Deed).

☐ **B.** Upon Buyer's completion, signing and delivery to Seller (or to the Listing Firm or the Closing Agent agreed by Buyer and Seller) of all loan, closing documents and Purchase Price funds required to be executed or delivered by Buyer.

☐ **C.** After the Closing (Seller's delivery of executed and acknowledged Deed), but no later than 11:59 p.m. on the date which is _____ days after Closing. Seller agrees to pay $_____ per day from the day after closing through the date possession is delivered. Receipt and acceptance of such daily rental shall not extend the time of Seller's requirement to deliver possession at the time set forth herein. Seller will be responsible for all damages caused to the Property during the period between the closing date and the date possession is delivered to Buyer, only if caused by Seller's intentional or negligent actions. The rental sum shall be paid:

　　☐ **(i)** by depositing this sum with Listing Firm (or the Closing Agent agreed to by Buyer and Seller) to be disbursed to the parties entitled thereto on the date possession is delivered.

　　☐ **(ii)** directly to Buyer on the date possession is delivered.

☐ **D.** Delayed Possession. (See Delayed Occupancy Addendum attached)

☐ **E.** Prior to Closing. (See Early Occupancy Addendum attached)

Form #ARA43, Rev. 051214

PLTF 43

**059**

**Real Estate Contract
(Lots and Acreage)**

Page 5 of 9

THREE CHIMNEYS REALTY
7648 Edgemont Road
Higden, Arkansas 72067
Ph (501) 825-7500 Fax (501) 825-6844
Email: info@3chimre.com



Copyright
**2006**
Arkansas
REALTORS®
Association

Form Serial Number: OF8ADM-5ST48L-191401

## 15. OTHER CONTINGENCY:

☒ **A.** No Other Contingency. (Except for those conditions listed elsewhere in this Real Estate Contract.)  It is understood and agreed that Seller has the right to enter into backup Real Estate Contracts and other Real Estate Contracts shall not affect this Real Estate Contract.

☐ **B.** This Real Estate Contract is contingent upon

_____

_____

_____

_____

_____

on or before (month) _____ (day) _____ (year) _____.

During the term of this Real Estate Contract (Select one):

☐ **(i)**  **Non-Binding Clause:**  It is understood and agreed that every effort will be made to obtain another Real Estate Contract on the Property, and that in the event another offer is accepted this Real Estate Contract is null and void and earnest money shall be promptly refunded to Buyer.

☐ **(ii)**  **Binding with Escape Clause:**  Seller has the right to continue to show the Property and solicit and enter into another Real Estate Contract on this Property.  However, all contracts shall be subject to termination of this Real Estate Contract.  Should Seller elect to provide written notice of an additional Real Estate Contract being accepted by Seller (the "Notice"), Buyer shall have _____ hours to remove this contingency.  Buyer shall be deemed in receipt of the Notice upon the earlier of (a) actual receipt of the Notice or (b) two (2) business days after Seller or Listing Firm deposits the Notice in the United States mail, certified for delivery to Buyer at _____ _____ with sufficient postage to ensure delivery.  Removal of this contingency shall occur only by delivery of written notice, in a manner ensuring actual receipt, to Seller or Listing Firm.  Time is of the essence.  Buyer further agrees to forfeit all earnest monies in the event Buyer does not perform on this Real Estate Contract for any reason concerning this contingency, if the same is removed.   If this contingency is removed, a closing date shall be agreed upon by the parties. If a closing date is not agreed upon closing shall occur _____ calendar days from removal.  Should Buyer not remove this contingency as specified, then this Real Estate Contract shall be deemed null and void. All time constraints in this Real Estate Contract referred to in Paragraphs 5, 17, and 22B refer to the time Buyer removes the contingency.

☐ **(iii)**  **Binding without Escape Clause:**  It is understood and agreed that Seller has the right to enter into backup Real Estate Contracts, and other Real Estate Contracts shall not affect this Real Estate Contract.

Form #ARA43, Rev. 051214

PLTF 44

060

**Real Estate Contract (Lots and Acreage)**

Page 6 of 9

THREE CHIMNEYS REALTY
7648 Edgemont Road
Higden, Arkansas 72067
Ph (501) 825-7500 Fax (501) 825-6844
Email: info@3chimre.com



Copyright
**2006**
Arkansas
REALTORS®
Association

Form Serial Number: OF8ADM-5ST48L-191401

**16. BUYER'S DISCLAIMER OF RELIANCE:** BUYER CERTIFIES BUYER WILL PERSONALLY INSPECT OR HAVE A REPRESENTATIVE INSPECT THE PROPERTY AS FULLY DESIRED PRIOR TO CLOSING. BUYER CERTIFIES BUYER HAS NOT AND WILL NOT RELY ON ANY WARRANTIES, REPRESENTATIONS OR STATEMENTS OF SELLER, LISTING FIRM, SELLING FIRM, OR ANY AGENT, INDEPENDENT CONTRACTOR, OR EMPLOYEE ASSOCIATED WITH THOSE ENTITIES REGARDING SIZE (INCLUDING WITHOUT LIMITATION THE SQUARE FEET IN IMPROVEMENTS LOCATED ON THE PROPERTY), QUALITY, VALUE OR CONDITION OF THE PROPERTY, INCLUDING WITHOUT LIMITATION ALL IMPROVEMENTS, APPLIANCES, PLUMBING, ELECTRICAL OR MECHANICAL SYSTEMS. HOWEVER, BUYER MAY RELY UPON ANY INFORMATION SPECIFIED IN WRITING INCLUDING ANY WRITTEN DISCLOSURES PROVIDED BY SELLER AND DESCRIBED IN THE SELLER'S PROPERTY DISCLOSURE PARAGRAPH OF THIS REAL ESTATE CONTRACT, REGARDING THE POSSIBILITY OF ANY DEFECTS IN ANY SUCH REAL OR PERSONAL PROPERTY.

LISTING FIRM AND SELLING FIRM CANOT GIVE LEGAL ADVICE TO BUYER OR SELLER. LISTING FIRM AND SELLING FIRM STRONGLY URGE STATUS OF TITLE TO THE PROPERTY, CONDITION OF PROPERTY, AND SQUARE FOOTAGE OF IMPROVEMENTS, QUESTIONS OF SURVEY, AND ALL OTHER REQUIREMENTS OF BUYER SHOULD EACH BE INDEPENDENTLY VERIFIED AND INVESTIGATED BY BUYER OR A REPRESENTATIVE CHOSEN BY BUYER.

BUYER IS HEREBY NOTIFIED THAT BUYER WILL BE REQUIRED TO UTILIZE THE INSPECTION, REPAIR AND SURVEY ADDENDUM PURSUANT TO THE SURVEY PARAGRAPH AND THE INSPECTION AND REPAIR PARAGRAPH OF THIS REAL ESTATE CONTRACT AND WILL BE REQUIRED TO SIGN ON PAGE 4 OF THE INSPECTION, REPAIR AND SURVEY ADDENDUM UPON COMPLETING ALL INSPECTIONS PRIOR TO OR AT CLOSING.

**17. SELLER PROPERTY DISCLOSURE:**

☐ **A.** Though a Disclosure Form may have been completed (or can be completed) by Seller, Buyer has neither received nor requested and does not desire from Seller a written disclosure concerning the condition of the Property prior to the execution of this Real Estate Contract, but this fact neither limits nor restricts in any way Buyer's Disclaimer of Reliance set forth in Paragraph 16 of this Real Estate Contract. BUYER IS STRONGLY URGED BY THE SELLING FIRM AND THE LISTING FIRM TO MAKE ALL INDEPENDENT INSPECTIONS DEEMED NECESSARY PRIOR TO SIGNING THIS REAL ESTATE CONTRACT.

☐ **B.** Buyer and Seller acknowledge that upon the authorization of Seller, either the Selling Firm or the Listing Firm have delivered to Buyer, prior to the execution of this Real Estate Contract, a written disclosure prepared by Seller concerning the condition of the Property, but this fact neither limits nor restricts Buyer's Disclaimer of Reliance set forth in Paragraph 16 of this Real Estate Contract. The written disclosure prepared by Seller is dated (month) _____ (day) _____ (year) _____, and is warranted by Seller to be the latest disclosure and the answers contained in the disclosure are true, correct, and complete to the best of Seller's knowledge.

☒ **C.** Seller will provide to Buyer a written disclosure about the condition of the Property which will contain information that is true and correct to the best of Seller's knowledge. The disclosure should be presented to Buyer in a timely manner after the acceptance of this Real Estate Contract and Buyer has three (3) business days after receipt of disclosure to accept or reject said disclosure. If Seller fails to provide the disclosure in a timely manner, Buyer may request in writing for Seller to provide a disclosure within three (3) business days and if Seller does not provide the disclosure Buyer may declare this Real Estate Contract null and void, with Buyer to receive a refund of the earnest money. If Buyer finds the disclosure unacceptable within three (3) business days after receipt of disclosure, this Real Estate Contract may be declared null and void by Buyer, with Buyer to receive a refund of the earnest money. Receipt of this disclosure neither limits nor restricts in any way Buyer's Disclaimer of Reliance set forth in Paragraph 16 of this Real Estate Contract.

☐ **D.** Buyer understands no Seller Property Disclosure is available and will not be provided by Seller. BUYER IS STRONGLY URGED BY THE SELLING FIRM AND THE LISTING FIRM TO MAKE ALL INDEPENDENT INSPECTIONS DEEMED NECESSARY PRIOR TO SIGNING THIS REAL ESTATE CONTRACT.

Form #ARA43, Rev. 051214

PLTF 45

061

# Real Estate Contract (Lots and Acreage)

Page 7 of 9

**THREE CHIMNEYS REALTY**
7648 Edgemont Road
Higden, Arkansas 72067
Ph (501) 825-7500 Fax (501) 825-6844
Email: info@3chimre.com



Copyright
**2006**
Arkansas
**REALTORS®**
Association

Form Serial Number: **OF8ADM-5ST48L-191401**

*( on the property + the survey )*

## 18. OTHER:

#9 SURVEY - RED LINE (491) TO BE MARKED ON PROPERTY & SHOWN ON PLAT. SURVEY IN ALL ASPECTS TO BE ACCEPTABLE TO BUYER.

_____

_____

_____

_____

_____

## 19. AGENCY:

☐ **A. LISTING FIRM AND SELLING FIRM REPRESENT SELLER:** Buyer acknowledges that the Listing Firm and the Selling Firm and all licensees associated with those entities are the agents of Seller and that it is Seller who employed them, whom they represent, and to whom they are responsible. Buyer acknowledges that before eliciting or receiving confidential information from Buyer, the Selling Firm, which may be the same as the Listing Firm, verbally disclosed that the Selling Firm represents Seller.

☒ **B. LISTING FIRM REPRESENTS SELLER AND SELLING FIRM REPRESENTS BUYER:** Buyer and Seller acknowledge that the Listing Firm is employed by Seller and the Selling Firm is employed by Buyer. All licensees associated with the Listing Firm are employed by, represent, and are responsible to Seller. All licensees associated with the Selling Firm are employed by, represent, and are responsible to Buyer. Buyer acknowledges the Selling Firm verbally disclosed that the Listing Firm represents Seller. Seller acknowledges the Listing Firm verbally disclosed that the Selling Firm represents Buyer.

☐ **C. LISTING FIRM AND SELLING FIRM ARE THE SAME AND REPRESENT BOTH BUYER AND SELLER:** Seller and Buyer hereby acknowledge and agree that the Listing and the Selling Firm are the same and all licensees associated with the Listing and the Selling Firm are representing both Buyer and Seller in the purchase and sale of the above referenced Property and that Listing/Selling Firm has been and is now the agent of both Seller and Buyer with respect to this transaction. Seller and Buyer have both consented to, and hereby confirm their consent to agency representation of both parties. Further, Seller and Buyer agree:

    **(i)** the Listing/Selling Firm shall not be required to and shall not disclose to either Buyer or Seller any personal, financial or other confidential information concerning the other party without the express written consent of that party; however, Buyer and Seller agree Listing/Selling Firm shall disclose to Buyer information known to Listing/Selling Firm related to defects in the Property and such information shall not be deemed "Confidential information." Confidential information shall include but not be limited to any price Seller is willing to accept that is less than the offering price or any price Buyer is willing to pay that is higher than that offered in writing.

    **(ii)** by selecting this option 19C, Buyer and Seller acknowledge that when Listing/Selling Firm represents both parties, a possible conflict of interest exists, and Seller and Buyer further agree to forfeit their individual right to receive the undivided loyalty of Listing/Selling Firm.

    **(iii)** to waive any claim now or hereafter arising out of any conflicts of interest from Listing/Selling Firm representing both parties. Buyer and Seller acknowledge the Listing/Selling Firm verbally disclosed that the Listing/Selling Firm represents both parties in this transaction, and Buyer and Seller have given their written consent to this representation before entering into this Real Estate Contract.

☐ **D. SELLING FIRM REPRESENTS BUYER (NO LISTING FIRM):** Seller acknowledges that the Selling Firm and all licensees associated with the Selling Firm are the agents of Buyer and that it is Buyer who employed them, whom they represent, and to whom they are responsible. Seller acknowledges that at first contact the Selling Firm verbally disclosed that the Selling Firm represents Buyer. Any reference to "Listing Firm" in this Real Estate Contract will be considered to mean the Selling Firm, both Buyer and Seller acknowledging that all agents involved in this Real Estate Contract only represent Buyer.

Form #ARA43, Rev. 051214

**Real Estate Contract
(Lots and Acreage)**

Page 8 of 9

THREE CHIMNEYS REALTY
7648 Edgemont Road
Higden, Arkansas 72067
Ph (501) 825-7500 Fax (501) 825-6844
Email: info@3chimre.com



Copyright
**2006**
Arkansas
REALTORS®
Association

Form Serial Number: 0F8ADM-5ST48L-191401

**20. RISK OF LOSS:** Risk of loss or damage to the Property by fire or other casualty occurring prior to the time Seller delivers an executed and acknowledged deed to Buyer is expressly assumed by Seller.

**21. GOVERNING LAW:** This Real Estate Contract shall be governed by the laws of the State of Arkansas.

**22. LEAD BASED PAINT RISK ASSESSMENT/INSPECTION:**

☒ **A.** Buyer understands and agrees that, according to the best information available, improvements on this Property were not constructed prior to 1978 and should not contain lead-based paint hazards.

☐ **B.** Buyer has been informed that the Property, including without limitations, garages, tool sheds, other outbuildings, fences, signs and mechanical equipment on the Property that were constructed prior to 1978, may contain lead-based paint. Seller will provide The Lead Based Paint Disclosure (pre-1978 construction) within three (3) business days after acceptance of this Real Estate Contract.

**Buyer has been advised of Buyer's rights under this Paragraph 22.**

**23. MERGER CLAUSE:** This Real Estate Contract, when executed by both Buyer and Seller, shall contain the entire understanding and agreement between Buyer and Seller with respect to all matters referred to herein and shall supersede all prior or contemporaneous agreements, representations, discussions and understandings, oral or written, with respect to such matters. This Real Estate Contract shall not supersede any agency agreements entered into by Buyer or Seller and Listing Firm or Selling Firm.

**24. ASSIGNMENT:** This Real Estate Contract may not be assigned by Buyer unless the consent of Seller is obtained such consent not to be unreasonably withheld. It shall not be considered unreasonable for Seller to withhold consent if Seller is to provide financing for Buyer in any amount.

**25. TIME:** Buyer and Seller agree time is expressly of the essence with regard to all times and dates set forth in this Real Estate Contract. Further, all times and dates set forth in this Real Estate Contract refer to Arkansas Central time and date.

**26. ATTORNEY'S FEES:** Should Buyer or Seller initiate any type of administrative proceeding, arbitration, mediation or litigation against the other (or against an agent for the initiating party or agent for the non-initiating party), it is agreed by Buyer and Seller (aforementioned agents being third-party beneficiaries of this Paragraph) that all prevailing parties shall be entitled to an award of their respective attorney's fees and costs incurred in defense of such initiated action against the non-prevailing party.

**27. COUNTERPARTS:** This Real Estate Contract may be executed in multiple counterparts each of which shall be regarded as an original hereof but all of which together shall constitute one in the same.

**28. EXPIRATION:** This Real Estate Contract expires if not accepted on or before (month) APRIL (day) 04 (year) 2006 at 12:00 PM (am)(pm).

Form #ARA43, Rev. 051214

PLTF 47

**063**

# Real Estate Contract
## (Lots and Acreage)
Page 9 of 9

**THREE CHIMNEYS REALTY**
7648 Edgemont Road
Higden, Arkansas 72067
Ph (501) 825-7500 Fax (501) 825-6844
Email: info@3chimre.com



Copyright
**2006**
Arkansas
REALTORS®
Association

THIS IS A LEGALLY BINDING REAL ESTATE CONTRACT WHEN SIGNED BY THE PARTIES BELOW. READ IT CAREFULLY. YOU MAY EMPLOY AN ATTORNEY TO DRAFT THIS FORM FOR YOU. IF YOU DO NOT UNDERSTAND THE EFFECT OF ANY PART, CONSULT YOUR ATTORNEY BEFORE SIGNING. REAL ESTATE AGENTS CANNOT GIVE YOU LEGAL ADVICE. THE PARTIES SIGNED BELOW WAIVE THEIR RIGHT TO HAVE AN ATTORNEY DRAFT THIS FORM AND HAVE AUTHORIZED THE REAL ESTATE AGENT(S) TO FILL IN THE BLANKS ON THIS FORM.

THIS FORM IS PRODUCED AND COPYRIGHTED BY THE ARKANSAS REALTORS® ASSOCIATION. THE SERIAL NUMBER BELOW IS A UNIQUE NUMBER NOT USED ON ANY OTHER FORM. THE SERIAL NUMBER BELOW SHOULD BE AN ORIGINAL PRINTING, NOT MACHINE COPIED, OTHERWISE THE FORM MAY HAVE BEEN ALTERED. DO NOT SIGN THIS FORM IF IT IS BEING EXECUTED PAST DECEMBER 31, 2006.

FORM SERIAL NUMBER: **OF8ADM-5ST48L-191401**

The above Real Estate Contract is executed on
(month) April          (day) 01   (year) 2006   at 8:00 PM          (am)(pm).

**THREE CHIMNEYS REALTY**
Selling Firm

Signature: _____

Printed Name: **LINDA STREIB**
Supervising Broker

Signature: _Christie Dorris_

Printed Name: **CHRISTIE DORRIS**
Selling Agent

Signature: _____

Printed Name: **DOUGLAS A. STANLEY**
Buyer

Signature: _Deborah A. Stanley_

Printed Name: **DEBORAH A. STANLEY**
Buyer

The above Real Estate Contract is executed on
(month) _____ (day) _____ (year) _____ at _____ (am)(pm).

_____
Listing Firm

Signature: _____

Printed Name: _____
Supervising Broker

Signature: _____

Printed Name: _____
Listing Agent

Signature: _____

Printed Name: _____
Seller

Signature: _____

Printed Name: _____
Seller

The above offer was ☐ rejected ☐ counteroffered (Form Serial Number _____)
on (month) _____ (day) _____ (year) _____ at _____ (am)(pm)

_____
Seller's Initials

_____
Seller's Initials

(Page 9 of 9)

Form #ARA43, Rev. 051214



Apr 03 06 11:51a
APR-03-2006 MON 10:18 AM RED APPLE PROPERTIES      FAX NO. 5013625048      P. 3

**Seller's Counter to the Real Estate Contract**

Page 1 of 2

RED APPLE REAL ESTATE
325 Hwy 110 W.
Heber Springs, AR 72543
Ph: (501) 362-5025 Fax: (501) 362-5048

Copyright
2006
Arkansas
REALTORS®
Association

Form Serial Number: 05SADM-5SWKE3-0GDA01

The Real Estate Contract (Form Serial Number 5ST48L- 191401                    ), dated
(month) April            (day) 1    , (year) 2006   , between Buyer, Douglas A. & Deborah A. Stanley
                                        , and Seller, Charles Capps
                        , covering the real property known as Lot # 153 Plat 9 Diamond
Bluff Estates Cleburne County, Ar.                    (the "Property"), is not accepted in its present
form; therefore, the following counter offer is hereby submitted:

#3 Purchase Price: $230,000.00

#8 *no percolation test is required there is*
*a sewer system the worker will be required to*
*install a septic tank with a lift pump &*
*sewer lines to the sewer lines in the street cl*

*Charles Capps*

**OTHER TERMS:** All other terms as provided in the initial Real Estate Contract are incorporated herein by
reference and shall remain exactly as set forth therein, solely except those amended above.

**RIGHT TO ACCEPT OTHER OFFERS:** Seller reserves the right to accept any other offer prior to actual receipt by
Listing Firm of an executed and accepted copy of this Seller's Counter to the Real Estate Contract.

**SIGNATURES APPEAR ON PAGE 2 OF 2**

(Page 1 of 2)

PLTF 38

066



**Three Chimneys Realty**
GREERS FERRY LAKE

*Linda Straub – Broker*

**DATE:** _4/5/06_

**TO:** _Doug Stanley_

**FAX #:** _630-798-2212_

**FROM:** _Christi_

**FAX #:(501) 825-6844**

**NO. OF PAGES:** _7_
**(INCLUDES COVER)**

**MESSAGE:** _Please sign page 6 at bottom indicating you received document._
_Fax back only Page 6 to_
_501-825-6844_

*7648 Edgemont Road • Higden, AR 72067 • 501-825-7500 • Fax: 501-825-6844 • Website:http//3chlmro.com*

## Seller's Counter to the Real Estate Contract
Page 2 of 2

**RED APPLE REAL ESTATE**
325 Hwy 110 W.
Heber Springs, AR 72543
Ph: (501) 362-5025 Fax: (501) 362-5048

REALTOR®

Copyright
**2006**
Arkansas
REALTOR®
Association

**COUNTERPARTS:** This Seller's Counter Offer to the Real Estate Contract may be executed in multiple counterparts each of which shall be regarded as an original hereof but all of which together shall constitute one in the same.

**EXPIRATION OF COUNTER:** This Seller's Counter Offer to the Real Estate Contract expires if not accepted on or before (month) April _____ (day) 4 , (year) 2006 at 6:00 P>M (am)(pm).

THIS IS A LEGALLY BINDING COUNTER WHEN SIGNED BY THE PARTIES BELOW. READ IT CAREFULLY. YOU MAY EMPLOY AN ATTORNEY TO DRAFT THIS FORM FOR YOU. IF YOU DO NOT UNDERSTAND THE EFFECT OF ANY PART, CONSULT YOUR ATTORNEY BEFORE SIGNING. REAL ESTATE AGENTS CANNOT GIVE YOU LEGAL ADVICE. THE PARTIES SIGNED BELOW WAIVE THEIR RIGHT TO HAVE AN ATTORNEY DRAFT THIS FORM AND HAVE AUTHORIZED THE REAL ESTATE AGENT(S) TO FILL IN THE BLANKS ON THIS FORM.

THIS FORM IS PRODUCED AND COPYRIGHTED BY THE ARKANSAS REALTOR® ASSOCIATION. THE SERIAL NUMBER BELOW IS A UNIQUE NUMBER NOT USED ON ANY OTHER FORM. THE SERIAL NUMBER BELOW SHOULD BE AN ORIGINAL PRINTING, NOT MACHINE COPIED, OTHERWISE THE FORM MAY HAVE BEEN ALTERED. DO NOT SIGN THIS FORM IF IT IS BEING EXECUTED PAST DECEMBER 31, 2006.

**FORM SERIAL NUMBER: 05SADM--5SWKH3--0GDA01**

The above Seller's Counter to the Real Estate Contract is executed on
(month) April _____ (day) 3 (year) 2006 at 10:00A.M. (am)(pm).

**Real Apple Real Estate**
Listing Firm

Signature: *Peggy Reeder*
Printed Name: Peggy Reeder
Supervising Broker

Signature: X *Charlie Papp*
Printed Name: CHARLES PAPP
Seller

Signature: *Peggy Reeder*
Printed Name: Peggy Reeder
Listing Agent

Signature: _____
Printed Name: _____
Seller

The above Seller's Counter to the Real Estate Contract is executed on
(month) April (day) 03 (year) 2006 at 6:00PM (am)(pm).

**Three Chimney Realty**
Selling Firm

Signature: _____
Printed Name: LINDA STREIB
Supervising Broker

Signature: *Douglas A. Stanley (Wit)*
Printed Name: Douglas A. Stanley
Buyer

Signature: *Christie Dorris*
Printed Name: Christie Dorris
Selling Agent

Signature: *Dbrah A. Stanley*
Printed Name: Deborah A. Stanley
Buyer

**THIS COUNTER WAS REJECTED BY BUYER**
on (month) _____ (day) _____ (year) _____ at _____ (am)(pm)

Buyer's Initials _____          Buyer's Initials _____

(Page 2 of 2)



Mail Tax Statements To:
M/M Douglas A. Stanley
3 S. 611 Landon Drive
Warrenville, AR 60555

Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 05/24/2006,10:24:13 AM
Fees $17.00
DOC # 2006003545
Karen Giles, Clerk

## WARRANTY DEED

**KNOW ALL BY THESE PRESENTS:**

That CHARLES CAPPS MINISTRIES, INC., a corporation organized under and by virtue of the laws of the State of Oklahoma, by its President and Secretary, duly authorized by proper resolution of its Board of Directors, and CHARLES CAPPS, (Individually), and as Attorney-in-Fact for PEGGY CAPPS, (Individually), his wife pursuant to Power of Attorney dated November 30, 1982, and recorded in Book 242, at Pages 251-252 of the records of Cleburne County, Arkansas, GRANOTRS, for and in consideration of the sum of TWO HUNDRED THIRTY THOUSAND AND NO/100--------DOLLARS ($230,000.00), cash in hand paid by DOUGLAS A. SATNLEY AND DEBORAH A. STANLEY, HUSBAND AND WIFE, GRANTEES, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto the Grantee and unto their heirs and assigns forever, the following described lands located in the County of Cleburne, State of Arkansas:

Lot Number One Hundred Fifty-three (153), Plat 9, Diamond Bluff Estates Subdivision, Cleburne County, Arkansas, as filed February 24, 2003, in the Plat Records of Cleburne County, Arkansas.

Subject to the reservations, limitations and restrictions set forth in the Plat and Bill of Assurance, and any amendments thereto, as recorded in the records of Cleburne County, Arkansas.

TO HAVE AND TO HOLD the same unto the said GRANTEES and unto their heirs, and assigns forever, with all appurtenances and hereditaments thereunto belonging.





Ex.
10

PLTF 66

And GRANTORS hereby covenant with the said GRANTEES that they will forever warrant and defend the title to said lands against all lawfull claims whatever.

And we, the GRANTORS for all and in consideration of the said sum of money, do hereby release and relinquish unto the GRANTEES all our right of dower, curtesy and homestead in and to the said land.

IN TESTIMONY WHEREOF, the name of the corporation hereunto affixed by its President and Secretary, and Charles Capps (Individually) and Peggy Capps, (Individually), by and through Charles Capps, her attorney-in-fact, on this *22nd* day of May, 2006.


CHARLES CAPPS MINISTRIES, INC

By: _____
     Charles Capps, (President/Secretary)

_____
Charles Capps, (Individually)

_____
Peggy Capps, (Individually)
BY: Charles Capps, her Attorney-in-fact

PLTF 67

079

## ACKNOWLEDGMENT

STATE OF ARKANSAS      )
                       )ss.
COUNTY OF CLEBURNE    )

On this day, personally appeared before me CHARLES CAPPS, (Individually), and

PEGGY CAPPS, (Individually) by and through Charles Capps, her Attorney-in-Fact, to me well

known as the person whose name is subscribed to the within instrument and stated that he had

executed the same for the consideration, uses, purposes and in the capacity therein mentioned

and set forth.

IN WITNESS WHEREOF, I hereunto set my hand and seal on this _22ND_ day of

May, 2006.

_____
Notary Public

My Commission Expires:

_____

(S E A L)

OFFICIAL SEAL
R.D. WILKINSON
NOTARY PUBLIC-STATE OF ARKANSAS
CLEBURNE COUNTY
MY COMMISSION EXPIRES 10-26-2015

I certify under penalty of false swearing that
at least the correct amount of documentary
stamps have been placed on this instrument.

Signed_____
          Grantee Agent

PLTF 68

**080**

| A. U.S. Department of Housing and Urban Development | B. Type of Loan |
|---|---|

| | |
|---|---|
| | 1. [ ] FHA        2. [ ] FMHA        3. [ ] Conv. Unins. |
| | 4. [ ] VA        5. [ ] Conv. Ins.        [X] Other. |
| | 6. File Number        7. Loan Number |
| **Settlement Statement** | C031706 |
| | 8. Mortgage Ins. Case No. |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked ("POC") were paid outside the closing: they are shown here for information purposes and are not included in the totals.

**D. Name of Borrower:** Douglas A. Stanley, 3 S.611 Landon Drive, Warrenville, IL 60555
Deborah A. Stanley, 3 S.611 Landon Drive, Warrenville, IL 60555

**E. Name of Seller:** Charles Capps Ministries, Inc., 17555 Hwy. 31 South, England, AR 72116
Charles Capps, 17555 Hwy. 31 South, England, AR 72116
Peggy Capps, 17555 Hwy. 31 South, England, AR 72116

**F. Name of Lender:**

**G. Property Location:** Lot 153, Diamond Bluff Estates

**H. Settlement Agent:** Cornerstone Title & Escrow Services, Inc. (501) 362-9600        TIN:  51-0432278
**Place of Settlement:**  117 South Third Street, Heber Springs, AR 72543

**I. Settlement Date:**  5/22/2006        Proration Date:  5/22/2006

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross amount due from borrower: | | 400. Gross amount due to seller: | |
| 101. Contract sales price | 230,000.00 | 401. Contract sales price | 230,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 574.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance: | | Adjustments for items paid by seller in advance: | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross amount due from borrower: | 230,574.00 | 420. Gross amount due to seller: | 230,000.00 |
| 200. Amounts paid by or in behalf of the borrower: | | 500. Reduction in amount due to seller: | |
| 201. Deposit or earnest money | 3,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 24,503.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. 2005 Taxes #002-01321-065 | 163.05 |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller: | | Adjustments for items unpaid by seller: | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes   1/1/2006   to 5/22/2006 | 62.99 | 511. County taxes   1/1/2006   to 5/22/2006 | 62.99 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. | 3,062.99 | 520. Total reduction in amount due seller: | 24,729.04 |
| 300. Cash at settlement to/from borrower: | | 600. Cash at settlement to/from seller: | |
| 301. | 230,574.00 | 601. Gross amount due to seller (line 420) | 230,000.00 |
| 302. | | 602. Less total reduction in amount due seller (line 520) | 24,729.04 |
| 303. CASH FROM/TO SELLER | | 603. CASH TO SELLER | 205,270.96 |

082

PLTF 70

| | | | | Reduction in amount due to seller | |
|---|---|---|---|---|---|
| 201. | Deposit or earnest money | 3,000.00 | 501. | Excess deposit (see instructions) | |
| 202. | Principal amount of new loan(s) | | 502. | Settlement charges to seller (line 1400) | 24,503.00 |
| 203. | Existing loan(s) taken subject to | | 503. | Existing loan(s) taken subject to | |
| 204. | | | 504. | Payoff of first mortgage loan | |
| 205. | | | 505. | Payoff of second mortgage loan | |
| 206. | | | 506. | | |
| 207. | | | 507. | 2005 Taxes #002-01321-065 | 163.05 |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| **Adjustments for items unpaid by seller** | | | **Adjustments for items unpaid by seller** | | |
| 210. | City/town taxes | | 510. | City/town taxes | |
| 211. | County taxes   1/1/2006   to 5/22/2006 | 62.99 | 511. | County taxes   1/1/2006   to 5/22/2006 | 62.99 |
| 212. | Assessments | | 512. | Assessments | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. | **Total paid by/for borrower:** | 3,062.99 | 520. | **Total reduction in amount due seller:** | 24,729.04 |
| **300. Cash at settlement from/to borrower** | | | **600. Cash at settlement to/from seller** | | |
| 301. | Gross amount due from borrower (line 120) | 230,574.00 | 601. | Gross amount due to seller (line 420) | 230,000.00 |
| 302. | Less amount paid by/for borrower (line 220) | 3,062.99 | 602. | Less total reduction in amount due seller(line 520) | 24,729.04 |
| 303. | CASH (X)FROM ()TO BORROWER | 227,511.01 | 603. | CASH ()FROM (X)TO SELLER | 205,270.96 |

SUBSTITUTE FORM 1099 SELLER STATEMENT - The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER INSTRUCTION - If this real estate was your principal residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide Cornerstone Title & Escrow Services, Inc. (501) 362-9600 with your correct taxpayer identification number.

If you do not provide Cornerstone Title & Escrow Services, Inc. (501) 362-9600 with your correct taxpayer identification number, you may be subject to civil or criminal penalties.

CHARLES CAPPS MINISTRIES, INC.

_Doug A. Stanley_                          _Charles Capps_
Doug A. Stanley ()                          Charles Capps, President/Secretary



SURVEY FOR:
**Charles Capps**

JOB NO. 06 - 070

#1102-2-7

N 01°31'08" E
82.81'

S 38°50'14" E
90.62'

S 89°58'53" E
59.14'

#1102-2-6B

N 11°52'32" W
177.40'

#1102-2-8

S 38°33'36" E
203.55'

*LOT 153*

Bldg. Setback
Utility Ease.

LAKEFRONT
ROAD
(50' Right-
of-Way)

Ⓐ
Ⓑ
Ⓒ
Ⓓ
Ⓔ

Building Setback
Utility Easement

S 31°07'19" W
373.97'

Bldg.
Setback

Drive/Utility Ease.

N 68°58'57" W 68.87'

N 62°32'01" W 56.57'

**NOTE:**

1. EXCEPT AS SPECIFICALLY STATED OR SHOWN ON THIS PLAT, THIS SURVEY DOES NOT PURPORT TO REFLECT ANY OF THE FOLLOWING WHICH MAY BE APPLICABLE TO THE SUBJECT REAL ESTATE: EASEMENTS, OTHER THAN POSSIBLE EASEMENTS WHICH WERE PLAINLY VISIBLE AT THE TIME OF MAKING THIS SURVEY; BUILDING SET-BACK LINES; RESTRICTIVE COVENANTS AND SUBDIVISION RESTRICTIONS; ZONING OR OTHER LAND USE REGULATIONS; AND ANY OTHER FACTS WHICH AN ACCURATE AND CURRENT TITLE SEARCH MAY DISCLOSE.
2. NO STATEMENT IS MADE CONCERNING ENVIRONMENTAL AND SUBSURFACE CONDITIONS OR THE EXISTENCE OF UNDERGROUND OR OVERHEAD CONTAINERS OR FACILITIES WHICH MAY AFFECT THE USE OR DEVELOPMENT OF THIS TRACT.
3. NO ATTEMPT HAS BEEN MADE AS A PART OF THIS BOUNDARY SURVEY TO OBTAIN OR SHOW DATA CONCERNING THE EXISTENCE, SIZE DEPTH, CONDITION, CAPACITY OR LOCATION OF ANY UTILITY OR MUNICIPAL/PUBLIC SERVICE FACILITY. FOR INFORMATION REGARDING THESE UTILITIES OR FACILITIES, PLEASE CONTACT THE APPROPRIATE AGENCIES.

SURVEY DESCRIPTION:

LOT 153
DIAMOND BLUFF
ESTATES SUBDIVISION,
PLAT 9
CLEBURNE COUNTY,
ARKANSAS

REGISTERED
STATE OF
ARKANSAS
NO. 1269
PERRY   SATT...
PROFESSIONAL LAND SURVEYOR

| LOT LINE BEARINGS & DISTANCES | | |
|---|---|---|
| A | N 16°38'46" E | 56.77' |
| B | N 27°56'00" E | 34.40' |
| C | N 31°30'36" E | 42.84' |
| D | N 06°17'55" E | 30.60' |
| E | N 10°46'13" E | 19.58' |
| F | N 27°33'20" E | 80.55' |

NOTE:
1. 16' DRIVEWAY AND UTILITY EASEMENT ALONG SOUTH RIGHT-OF-WAY OF LAKEFRONT ROAD (A COUNTY ROAD).
2. 25' BUILDING SETBACK ALONG ALL SIDE LOT LINES.
3. 30' BUILDING SETBACK ALONG NORTH RIGHT-OF-WAY OF LAKEFRONT ROAD.
4. 10' UTILITY EASEMENT ALONG ALL LOT LINES

LEGEND:

R.O.W.     RIGHT-OF-WAY
◇          CORPS OF ENGINEERS

PETT 72

083





I certify under penalty of false swearing that at least the correct amount of documentary stamps have been placed on this instrument.

Signed_____

Mail Tax Statements To:
M/M James Mitchell
5117 Sherwood
Little Rock, AR 72207

# WARRANTY DEED

KNOW ALL BY THESE PRESENTS:

That CHARLES CAPPS MINISTRIES, INC., a corporation organized under and by virtue of the laws of the State of Oklahoma, by its President and Secretary, duly authorized by proper resolution of its Board of Directors, and CHARLES CAPPS, (Individually), and as Attorney-in-Fact for PEGGY CAPPS, (Individually), his wife pursuant to Power of Attorney dated November 30, 1982, and recorded in Book 242, at Pages 251-252 of the records of Cleburne County, Arkansas, GRANOTRS, for and in consideration of the sum of TWO HUNDRED TWENTY FIVE THOUSAND AND NO/100-------DOLLARS ($225,000.00), cash in hand paid by JAMES MITCHELL and RUTH MITCHELL, husband and wife, GRANTEES, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto the Grantee and unto their heirs (successors)and assigns forever, the following described lands located in the County of Cleburne, State of Arkansas:

> Lot Number One Hundred Fifty-eight (158), Diamond Bluff Estates Subdivision, Cleburne County, Arkansas, as filed February 24, 2003, in the plat records of Cleburne County, Arkansas.

> Subject to the reservations, limitations and restrictions set forth in the Plat and Bill of Assurance, and any amendments thereto, as recorded in the records of Cleburne County, Arkansas.

TO HAVE AND TO HOLD the same unto the said GRANTEES and unto their heirs, (successors) and assigns forever, with all appurtenances and hereditaments thereunto belonging.

And GRANTORS hereby covenant with the said grantees that they will forever warrant and defend the title to said lands against all lawfull claims whatever.

And we, the GRANTORS for all and in consideration of the said sum of money, do hereby release and relinquish unto the GRANTEES all our right of dower, curtesy and homestead in and to the said land.

 

Page 1 of 3

 

209452  209451                209450    402935

Ex. 11

212

ACKNOWLEDGMENT

STATE OF ARKANSAS            )
                            )ss.
COUNTY OF CLEBURNE          )

On this day, personally appeared before me CHARLES CAPPS, (Individually), and PEGGY CAPPS, (Individually) by and through Charles Capps, her Attorney-in-Fact, to me well known as the person whose name is subscribed to the within instrument and stated that he had executed the same for the consideration, uses, purposes and in the capacity therein mentioned and set forth.

IN WITNESS WHEREOF, I hereunto set our hands and seal on the ____ day of

March, 2003.



"OFFICIAL SEAL"
R.D. WILKINSON
NOTARY PUBLIC, STATE OF ARKANSAS
CLEBURNE COUNTY
MY COMMISSION EXPIRES: 10-20-2008

_____
Notary Public

My Commission Expires:

_____

(S E A L)

Prepared by:
Cornerstone Title & Escrow Services, Inc.
300 W. Main Street
Heber Springs, AR 72543
Under the Supervision of:
Michael E. Irwin, Attorney-at-Law



CERTIFICATE OF RECORD
STATE OF ARKANSAS COUNTY OF CLEBURNE
I, KAREN GILES, Clerk of the Circuit
Court and Ex-Officio Recorder do hereby
certify that this instrument was FILED
FOR RECORD and is RECORDED on this
DATE April 1, 2003 11:58 and
TIME as and in BOOK 524 PAGE 466-467
KAREN GILES, clerk
_____ D.C.

467

213

**Exhibit 34**

*attention Peggy  I faxed this letter to the mitchels*

## CHARLES CAPPS MINISTRIES

February 27, 2003

Ruth & James Mitchell

This letter is in response to our phone conversation the morning of February 27, 2003.  You requested assurance from me in writing that I would take full responsibility to repair the road and culvert where the rip-rap slid off the side of the road into the ravine west of lot #158.

After I talked to you on the phone I called Jim Little in Heber Springs who has a civil engineer and made arrangements to meet him up there on site Wednesday of this next week.

This letter is to assure you that I will accept full responsibility for repairs to the road and culvert where the slide occurred.  We will begin work as soon as the weather permits.

As we discussed, if there is further problem with it and the county, for some reason does not fix it, I will accept the responsibility of you having access to your property either by repairing or moving the road far enough south to eliminate the problem.

*Diamond Bluff letter*
*Charles Capps*

Charles Capps

Ex.
12

## General Addendum

**Rector Phillips Morse**
5115 John F. Kennedy Blvd.
North Little Rock, Arkansas 72116
Office: (501) 791-1773 • Fax: (501) 791-2225



REALTOR®

Copyright
**2003**
Arkansas
REALTORS
Association

Page 1 of 2

Form Serial Number: 20ADM-2RS9L3-09S01

Regarding this Real Estate Contract (Form Serial Number **BIADM-20DPN0-00D04** ) dated
(month) **January** (day) **18** (year) **2003** between the Buyer, **James & Ruth Mitchell**
_____ and the Seller, **Charles Capps**
_____ covering the real property known as **Lot 158 Diamond Bluff**
**Estates, Osborne Co.** (the "Property"), the Undersigned Buyer and
Seller agree that:

This addendum shall become part of contract # **BIADM-20DPN0-00D04** without limitations of the rights
of the buyer as specified in paragraphs 2,16, and 17 of said contract.

Seller agrees to hire a licensed civil engineer to determine the cause of road failure , near access
to lot 158 of Diamond Bluff Estates, and to have the problem corrected and without any limitations
to correcting any problems that arise in the future due to faulty workmanship or incorrect
determination of road failure.

Buyer shall have an opportunity to review any reports from civil engineer & pertaining to measures
necessary to correct the problem and how it will be repaired.

Buyer agrees to close on property, with exception to no interest to accrue or payments to start
until all work is completed. first payment to be made no sooner than June 1, 2003

All other documents and letters from seller shall be attached and become part of this contract.

COPY

(Continued on Page 2 of 2)

**248**

03/12/2003  09:55     501-842-2103          C CAPPS MIN INC                    PAGE  02
                                                                              P.02
Mar-12-03 07:39A  gp

## General Addendum

**Rector Phillips Morse**

2003

Page 2 of 2

This General Addendum, upon its execution by both parties, incorporates by reference all provisions of the above re-referenced Real Estate Contract not expressly modified herein.

FORM SERIAL NUMBER: SIAD10-2R3SLG-00991

The above transaction is executed on

(mm/dd) _____ (day) 11 (year) 2003 at 9.00 (am/pm)

Selling Broker

The above transaction is accepted on

(mm/dd) March (day) 12 (year) 2003 at 11.00 AM (am/pm)

Listing Agent

Listing Agent

Buyer

Buyer

Selling Broker

CHARLES PAPP
CHARLES CAPPS MIN.

Seller
Charles Capps

(THIS SPACE LEFT INTENTIONALLY BLANK)

TOTAL P.03



**The
Mehlburger
Firm**
Engineers □ Landscape Architects □ Surveyors

March 6, 2003

Mr. Charles Capps
17555 Highway 31 S.
England, Arkansas 72046

      Re: Consultation on road washout.

Dear Mr. Capps:

Please accept this letter as a report of our on-site conference yesterday, March 5, and the resulting recommendations for repairing the washed section of the roadway fill on the north side of the roadway over the large culvert between Lots 155 and 156 on Lakefront Road in Diamond Bluff Subdivision.

Because of the extreme height of the fill on that side, and the fact that there has already been a significant slide of the fill material, it is my opinion that any attempts to contain the fill with concrete and prevent further slippage would not be cost effective.   The only concrete structure which would be effective is a gravity retaining wall.   Such a wall, for this height and on this material, would cost $50,000 to $100,000.

A much better approach, as discussed, is to move the road to the uphill side, placing it almost entirely on natural material in a cut.   The existing downhill slope can then be stabilized by placing some fill and anchoring it with appropriate erosion control methods.   The use of geotextile fabrics is a relatively low cost and practical way to prevent erosion and to establish a good vegetation ground cover.

In moving the road, it will be necessary to extend the inlet of the existing culvert, and extreme care should be taken to provide a curtain footing and make sure the water flow in and through the culvert, and not under it through the fill.   The surface of the road should be dressed and graded to prevent runoff of rainwater in the area of the current wash out.   The outlet end of the culvert should then be extended and well supported by new fill to insure that the discharge water falls on the natural streambed and not on the fill slope.

Thank you for the opportunity to be of service, and please call if we can be of further assistance.

Respectfully yours,

James R. Little, P.E.
Heber Springs Division Manager

Ex.
13

110 North 11th Street □ Heber Springs, AR 72543 □ 501/362-3118 □ Fax 501/362-4099

   DEF's 00352

# A Major Landslide on Greers Ferry Lake

by

John David McFarland and Doug Hanson

with assistance from Angela Braden and Scott Ausbrooks

Arkansas Geological Commission

May 19, 2005

Early on the morning of March 28, 2005, after two days of rain, a significant landslide occurred on the north side of Stevens Point on the south shore of Greers Ferry Lake. The slide collided, in part, with a house owned by Shirley Bradford, crushing the garage (Figure 1) on the south side of the house and tearing a small room off the west side (Figure 2). The slide ultimately involved an area extending from a sandstone ledge over one hundred feet in elevation above the house down to and into the lake over one hundred feet in elevation below the house and extending to either side of the house.



Figure 1. Bradford garage.



Figure 2. West side of Bradford house.

The bedrock sequence on the hillside seems to be in the lower Atoka Formation. It consists of a thick sequence of shale interrupted by thinner intervals of siltstones and sandstones. The slope is compound and in profile somewhat typical slope and bench. Two significant sandstone intervals were noted on the slope, one just below the 600-foot contour and the other near the 720-foot contour. These resistant units produce ledges that crop out incipiently. The sandstone ledges exhibit fairly frequent joint sets trending subparallel to the slope face and into the slope face at about north 10 to 20 degrees west. The hillside is draped with a thin to thick soil of residuum and colluvium derived from the weathered bedrock and is covered by a mature forest, except where disturbed by fairly recent cultural modifications. The slope averages about 20 degrees in the vicinity of the slide, but varies locally from near vertical to nearly level.

The slide area is over 700 feet long crown scarp to toe and 300 to 500 feet wide (Plate 1) The slide is divided in two major portions by the sequence of sandstones forming a significant ledge about midway down the slide area (just below the 600-foot contour). It

Ex.
14

1

also has some incipient marginal displacements extending laterally from the main slide area. The main crown scarp is developed just below the 720-foot contour sandstone ledge and the lowest toe development is in the lake. At the time of the slide the lake level as reported by the Corps of Engineers was 463 feet above mean sea level. Both the upper and lower portions of the slide are similar in that they have a steep upper section and flatten out to near level in their lower section. The upper sections have completely failed and display near vertical scarps in places. The lower sections are a jumble of trees, soil, rock, and other debris displaced and fallen from above. Pressure ridges are common along the toes of each section, forming from subsurface flow of the soils and small lobe thrusts. Rock falls, mud/debris flows, and translational and rotational slumping are all evident in various places in the slide area (Figures 3-10).



Figure 3. Slide area from Greers Ferry Lake. The upper portion of the slide is partially hidden by foliage still standing on the 600-foot contour ledge. (Photo courtesy of U.S. Army Corps of Engineers)

2



Figure 4. A view looking east north east at the upper portion of the slide area.



Figure 5. Rotational Slumping.

Figure 6 (above).  Translational slumping.
Figure 7 (below). Lower portion of slide area.

3

The small toe thrusts, noted in the lower reaches of each portion of the slide as lobes of debris, overran one another and stacked en echelon.  These lobes were better developed on the lower portion of the slide near and in the lake.  Some portions of the hillside apparently failed and were displaced somewhat intact.  Groups of trees were transported laterally or slightly downslope with little disruption.  Both rotational and translational slumping were noted on the west side of the 600-foot contour sandstone interval.  However, most of the slide's failure seemed to be via debris flow and rafting



Figure 8.  A pressure ridge extending into Greers Ferry Lake.





Figure 10 (above). Pressure ridge formed at lakeside.

Figure 9 (left).  A pressure ridge developed beneath the garage floor of the Bradford house.

4

**100**

Displacements and cracked ground were noted adjacent to the main area of failure (Figures 11-13). These slide margin displacements tended to be shallow slips of just a few feet. Often their expression is presented via a low crown scarp dying out with distance from the main slide area. The toes of these marginal displacements are somewhat indeterminate due to the natural roughness of the slope and a thick forest-litter cover. These marginal slides extended up to a few tens of feet, reaching over a hundred feet in at least two cases, from the main slide track.



Figure 11. Slippage marginal to main slide.



Figure 12. Incipient ground cracking due to minor slippage marginal to main slide. Note water in crack.



Figure 13. Ground displacement and subsidence east of the Bradford house.

5

The March 28 events were preceded by two days of rain.  On the day of the slide water was still running off the slope in several streams.  Two of these streams formed small waterfalls over the main crown scarp (see figure 14).  This water was mostly absorbed by the upper slide mass and did not result in overland flow much below the upper slide area.  However, water was copiously seeping from the lower developing scarp formed by the 600-foot ledge.  A week later the 600-foot contour ledge had more fully developed into a secondary crown scarp which displayed persistent flow from a joint in the sandstones several feet below the overlying surface.  Observations around the slide area suggested that upslope runoff water was focused into this portion of the hillside.  Open joints on the sandstone and siltstone outcroppings offered conduits for direct injection of water to the regolith/bedrock interface, promoting lubrication and instability.



Figure 14.  Crown scarp March 28, 2005.  Note water flowing freely over scarp surface.

Although most of the movement on the slide occurred the morning of March 28, the slide continued to creep for several days.  Trees, rocks, building debris, and soil continued to migrate to the edge of the 600-foot ledge and fall to the steeper slope below (Figure 15).  The lower part of the slide (that is the part below the 600-foot contour ledge) continued to flow and creep toward the lake.  Pressure ridges at the lake margin continued to inflate (Figures 8, 10).  Trees that were initially only tilted fell.  Experience has shown that this level of creep will continue for many months with slowing magnitude.

6



Figure 15. April 12, 2005. Rock fall due to continuing landslide creep

Adjacent to the top of the crown scarp we observed separation of the residuum from the base of the outcrop of the 720-foot contour sandstones as revealed by a shallow ditch in that location (Figure 16). Most of the separation appeared to have occurred well prior of the March 28 slide. We also noted that the poison ivy vines along a portion of the 720-foot contour outcrop adjacent to the slide were dead due to the roots being pulled apart and broken off. The condition of these vines suggested that the separation that unrooted these vines occurred last Fall or during the Winter (Figure 17). These observations suggest that the movement of the slope initiated well before the events of March 28. This prior movement might have also opened cracks in the soils providing a conduit for water.





Figure 17. Poison ivy killed by root separation.

Figure 16. Trench at base of 720-foot contour ledge.

7

The main part of the slide developed on the footprint of an ancient landslide. Judging by the trees growing in the main slide area it appears that the slide area had been relatively stable for well over a century. Outside the main slide area we noted traces of smaller slumps and slides similar to other recent landslides in the area. These traces registered themselves as anomalous slight upslope depressions with downslope bulges, low relief scalloping, and hummocky slopes. Boulders traceable to the 720-foot contour sandstone were noted displaced down to the 600-foot contour ledge. These smaller slide traces suggested incipient failure of the hillside is not uncommon, but does not occur under ambient conditions on a regular basis. The evidence we recognized indicated that decades might pass between slips as long as the hillside is undisturbed. Based on the estimated ages and trunk form of the trees growing on these old slide tracks suggest that they may have resulted during initial tree harvesting of the hillside in the late nineteenth and/or early twentieth century. It is evident that the static stability of the hillside is in a critical state where any disturbance will likely destabilize the local slope and potentially result in a landslide.

The Bradford family indicated that the house was built around 1996. They stated that they had had no problems with landslides up to the present slide. They told us that they had built a road around the house and down to the lake where they planned to install a boat dock. They said the road cut the forested hillside behind and up slope from the house, made a switchback to the west of the house, and passed downslope and in front of the house ending near the Corps of Engineers Greers Ferry property line directly downslope from the house. It is likely that this road construction was the principle destabilizing influence on the slope. The road cut reduced the slopes resistance to an increase in shearing stresses along the potential slide surface. Reduction of soil cohesion and shearing resistance due to rainfall completed the job resulting in slope failure. The road's construction also undoubtedly changed the natural runoff paths and may have redirected water so that more of it infiltered. Runoff from rainfall was able to penetrate along joints in bedrock exposures as well as direct infiltration thereby adding both weight and lubrication. Once slippage had initiated (during the past winter) new openings in the soil would provide additional routes for water infiltration.

The Bradford house, except for the crushed garage and lost west wing seems to be relatively stable at the time of this report. We noted that the walls were still plumb and straight. The brick was generally undisturbed. In our initial examination of the house we noted one small old crack in the brick at the top corner of one window on the front of the house unrelated to the present activity. A visit to the site a month after the initial slide revealed a small fresh crack in the brick at the base of the front wall of the house. The ground surface to the south and east of the house has subsided several inches to a few feet leaving the footing exposed (Figure 18). This subsidence has compromised the underground utilities leading to and from the house. The house itself seems to be foundationed on or shortly above the 600-foot contour sandstone beds providing an island of stability. Whether this condition will persist, only time will tell. At the time of this report we have not yet had a period of protracted rainfall to test the stability of these features.

8



Figure 18.  Surface subsidence on the east side of the Bradford house revealing its foundation.



Figure 19.  Phone and power boxes displaying effects of subsidence and displacement marginal to main slide area.

9

We noted 11 smaller landslides along the road leading to the Bradford house. We have no doubt that these slides were the direct result of the recent road building activity and the associated clearing of the forest to either side of the roadway. These slumps ranged from about 25 feet to 250 feet wide and about 20 feet to 100 feet toe to crown scarp (Figure 20). All of these unintendedly induced slumps were on the uphill side of the road. However, we did note that some cultural features normally expected to be level and or plumb deviated from the expectation downslope of the road suggesting wide spread slope instability (Figure 19). This hillside averages slightly less slope than the Bradford property, about 15 to 20 degrees. This area is under development at the present time. It is highly probable that additional modification or construction efforts on this hillside will induce more slope failure that will need to be addressed in non-traditional and creative constructional methodologies to be successful.



Figure 20.  Small landslides on Platinum Peaks development along road leading to Bradford house.

10



### Plate 1

Map of the Stevens Point area taken from the Fairfield Bay Quadrangle depicting the locations and general outlines of various landslides by red dots and black lines. The enclosed area on the right side of the map is the main slide area.

1000 Feet

# March 28, 2005 Greers Ferry Landslide GPS Locations
Collected by John David McFarland April 5, 2005               Page 1 of 2
Arkansas Geological Commission

## Perimeter of main slide

| Lat | Long | Notes: |
|---|---|---|
| 35d 32.641m | 92d 19.221m | Start of loop around main slide area, near Bradford house |
| 35d 32.628m | 92d 19.223m | |
| 35d 32.621m | 92d 19.226m | |
| 35d 32.593m | 92d 19.234m | |
| 35d 32.589m | 92d 19.233m | point just below & west of east side of crown scarp about 5-10 feet |
| 35d 32.597m | 92d 19.241m | point just below & west of east side of crown scarp about 5-10 feet |
| 35d 32.586m | 92d 19.244m | point just below crown scarp and southern-most edge about 10-20 feet |
| 35d 32.584m | 92d 19.257m | point just below crown scarp and southern-most edge about 10-20 feet |
| 35d 32.578m | 92d 19.266m | point just below crown scarp and southern-most edge about 10-20 feet |
| 35d 32.582m | 92d 19.281m | |
| 35d 32.609m | 92d 19.287m | |
| 35d 32.616m | 92d 19.289m | |
| 35d 32.652m | 92d 19.318m | |
| 35d 32.649m | 92d 19.318m | |
| 35d 32.668m | 92d 19.338m | |
| 35d 32.668m | 92d 19.330m | |
| 35d 32.680m | 92d 19.327m | |
| 35d 32.684m | 92d 19.315m | |
| 35d 32.703m | 92d 19.290m | |
| 35d 32.688m | 92d 19.262m | |
| 35d 32.686m | 92d 19.264m | |
| 35d 32.673m | 92d 19.265m | |
| 35d 32.663m | 92d 19.256m | |
| 35d 32.645m | 92d 19.245m | |
| 35d 32.640m | 92d 19.224m | end of loop around main slide |

## Spurs to main slide area, not directly part of main slide

| | | |
|---|---|---|
| 35d 32.647m | 92d 19.334m | A. extension of thin crack leading to lake, off ancient slide area (OASA) |
| 35d 32.653m | 92d 19.350m | B. extension of same thin crack as above leading to lake |
| 35d 32.646m | 92d 19.205m | east end of cracks marking subsidence of driveway, etc east of house |
| 35d 32.576m | 92d 19.291m | end of open crack extending off west end of crown scarp, OASA |
| 35d 32.637m | 92d 19.323m | location of small separate slide above road switchback off west side of main slide, OASA |
| 35d 32.660 | 92d 19.228 | near the middle of the crown scarp of a slide down slope and east of Bradford house (not observed on March 28), OASA, (Apr 12, '05) |

**108**

# March 28, 2005 Greers Ferry Landslide GPS Locations

Collected by John David McFarland April 5, 2005          Page 2 of 2
Arkansas Geological Commission

### Small landslides above road through Platinum Peaks Development, east of Bradford house

| | | |
|---|---|---|
| 35d 32.609m | 92d 19.146m | western most slide |
| 35d 32.593m | 92d 19.104m | |
| 35d 32.613m | 92d 19.077m | |
| 35d 32.629m | 92d 19.069m | |
| 35d 32.645m | 92d 19.058m | |
| 35d 32.657m | 92d 19.051m | |
| 35d 32.686m | 92d 19.001m | |
| 35d 32.701m | 92d 18.976m | A. west end of 250 foot wide slide |
| 35d 32.687m | 92d 18.969m | B. crown scarp of 250 foot wide slide |
| 35d 32.710m | 92d 18.928m | C. east end of 250 foot wide slide |
| 35d 32.713m | 92d 18.868m | |
| 35d 32.733m | 92d 18.756m | |
| 35d 32.764m | 92d 18.710m | eastern most roadside slump, near east end of Platinum Peaks new road (Apr 21, '05) |

### Miscellaneous

| | | |
|---|---|---|
| 35d 32.636 | 92d 19.239 | point near southeast corner of Bradford house (Apr 12, '05) |

**109**